UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MULTIWAVE SENSORS, INC.,                       :
                                               :          1:16-CV-1361-GHW
                                   Plaintiff,  :
              -against-                        :          OPPOSITION TO
                                               :          MOTION TO DISMISS
                                               :
SUNSIGHT INSTRUMENTS, LLC,                     :
SUNSIGHT INDUSTRIES, LLC, and                  :
SUNSIGHT HOLDINGS, LLC,                        :
                                               :
                                  Defendants.  :
-------------------------------------------------------------X

     Plaintiff  Multiwave Sensors Inc. ("Multiwave") seeks denial of Defendants' motion to

dismiss or transfer the above action (the "Motion") at least on the ground of being frivolous

because Defendant's employee infringed the patent in New York State by demonstrating, in

Rochester, New York, use of one of the products accused of infringement, and on the further

ground that 1) jurisdiction is proper, a) Defendants having targeted implementation of infringing

devices in this District by endusers serving all the major cellphone carriers resulting in a stream

of commerce facilitating the alignment of at least hundreds of cell phone antennas in New York,

b) Defendants having sent numerous emails to New York soliciting business, c) Defendants

having sent its employee to New York to make sales, d) Defendant's employee while in New

York having demonstrated and infringingly operated their infringing product, and sought sales of

the same, e) Defendants having quoted to sales prospects in New York, and f) Defendants having

serviced infringing AAT-08, AAT-15 and AAT-30 tools (collectively "AAT-08/15/30") it new

were in New York, 2) the exercise of jurisdiction is fair as Defendant has long been aware of

such acts of infringement in New York, the same resulting from its intentional and successful use

1

of a sales network that targets sales and use of its infringing products nationally (including within this District) and throughout the world, and 3) the §1404 considerations, considered in the context of this patent infringement action militate against a transfer from this District because, *inter alia*,  a)  New York has a strong interest in the hundreds of infringements being committed in this jurisdiction, b)  the only determinative evidence is two antenna alignment tools (both of which fit in a small shopping bag) and electronic sales records which are jurisdiction neutral, c) transfer to Florida will require the retention and education of another law firm by Plaintiff, d) needed experts are more likely to be found  in New York City than Orlando, Florida, e) Plaintiff has a long established relationship with counsel through its Canadian patent counsel and the Plaintiff's choice of forum is entitled to deference, and perhaps most importantly f) Defendant is about five times the size of Multiwave, as is more fully detailed below.

# TABLE OF CONTENTS

I. BACKGROUND …6

A. Defendant Sunsight Intentionally and Successfully Penetrated New York Market…6

B. Sunsight AAT-08/15/30 Models Have Ratchet and Pawl Tightening Mechanism…7

1.The Essential Evidence in an Apparatus Patent Infringement Action…7

2. Infringement Requires Only All Claim Elements in Sunsight AAT-08/15/30…7

3. Defense Limited to Allegation "Old Tool" Meets All Claim Elements…8

4. Manufacture of Sunsight AAT-08/15/30 Irrelevant to Infringement, and
Convenience of Witness with That Knowledge Is a Frivolous Argument…8

5. Only Rocker-Gripper Structure Affects Validity and Likely To Be Stipulated…8

6. Old Tool Fails As Prior Art without Structure to Tighten **and** Release…9

7. Only Accused Securing Structure Is at Issue and Likely To Be Stipulated…10

8. Structure, Not Testimony on Manufacture, at Issue for Infringement …11

C. Despite Denying Infringement in New York, Third Party Documents Show Same  …11

D. Sunsight Concedes Sunsight Instruments Is a Proper Party…12

E. National Marketing and Regular Channel to New York Establishes Jurisdiction …12

F. Defendant Has Committed Infringement in New York by Demonstrating Product in

Rochester…14

II. STAGE OF THE PROCEEDING…16

III. LAW AND ARGUMENT …17

A. Defendants' Motion Is Specious, Falsely Stating CPLR 302 Has Two Grounds for
Jurisdiction When an Unmentioned Third Ground Supports Jurisdiction …17
1. Legal Standards for Dismissal under Rule 12(b)(2) Have Not Been Met…17

2. Defendant Mischaracterizes C.P.L.R. §302(a), Omitting §302(a)(3) …18

a)        Tort outside State Causing Injury in State confers §302 (a)(3) Jurisdiction…18

i.       Defendant's Activities through its Distributors.…19

ii.      Defendant's Activities through its own employees. …19

iii.      Defendant'sinfringing activities directly through its Customers.…19

(b) Defendant's Actions Meet Solicitation Standard of 302(a)(3)…19

B. Defendants Should Not Be Dismissed For Improper Venue. …20

C.   28 U.S.C. §1404 Militate against Transfer.…20

1. Legal Standards for Transfer.…20

2. The 1404(a) Factors Favor Transfer. …21

a) Defendant Is About Five Times As Large As Plaintiff …21

b) Relative Costs of Counsel in New York in Florida Is Specious Argument…22

c) On Convenience of the Parties Defendants Improperly Compare Travel Time from New York.

…22

d) The Convenience of Witnesses Favors Transfer …23

e) The Locus of Operative Facts Favors NY Jurisdiction…23

f) Evidence Consists of Electronic Documents and Two Products of Defendant …23

g) No Relevant Nonparty Witnesses and Defendants Argument Is Specious…23

h) New York Has a Strong Interest in Policing Infringement in Its Borders…24

3. Balancing the 1404(a) Factors Establishes That a Transfer is NOT Proper. …24

IV. CONCLUSION …24

Table of Authorities

*Atlantic Recording Corp. v. Project Playlist, Inc*., 603 F. Supp. 2d 690, 698 (S.D.N.Y.2009)…21

*Ayers v. Arabian American Oil Co*.,571 F.Supp. 707, 709 (S.D.N.Y. 1983)…23

*Beverly Hills Fan Co. v. Royal Sovereign Corp*., 21 F. 3d 1558 (CAFC 1994)… 13

*Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558 (Fed. Cir. 1994)…16

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006)…21

*Hall v. South Orange, Franklin Twnshp*., 89 F.Supp.2d 488, 494 (SDNY 2000)…21

Holding, Ltd v Chase Manhattan Bank 329 F.3d 64, 71 (2d Cir. 2003)…21

*Kreutter v. McFadden Oil Corp*., 71 N.Y.2d 460, (1988)…17

*Kun Shan Ge RuiTe Tool v. Mayhew Steel Products*, 821 F. Supp 2d 498, 501 (Dist. Conn. 2010)

(citing 28 U.S.C. 1391(c) (2006)…20

*Liberty Mut. Ins. Co. v. Fairbanks Co*., 17 F. Supp. 3d 385, 399 (S.D.N.Y. 2014)…22

*Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 at 112…13

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)…21

*Porina v. Marward Shipping Co*., 521 F.3d 122, 126 (2d Cir. 2008)…16

*Robert Bosch LLC v. Alberee Products Inc*., 70 F.Supp. 3d 665, 668 (D. Del. 2014)…13

*SHLD, LLC v. Hall*, No. 15 Civ 6225 (LLS) SDNY Feb. 17, 2016…17

*VE Holding Corp. v. Johnson Gas Appliance Company*, 917 F.2d 1574, 1580 (CAFC 1990)…20

*800-Flowers, Inc. v. Intercontinental Florist, Inc*., 860 F. Supp. 128, 134…22

I. BACKGROUND

A. Defendant Sunsight Intentionally and Successfully Penetrated the New York Market

This patent infringement lawsuit involves a measurement tool for ensuring that antennas installed for use by cellular telephone system operators, such as Verizon, AT&T, T-Mobile, etc. are aimed in the right direction. In this business, manufacturers, such as the parties to this action, sell to distributors, who in turn sell to contractors who do the actual work under contract for the operators.

Defendant targets endusers in YouTube videos where it touts the fact that it has been approved by all the major cellular telephone system operators.

Some of Defendant's distributors have been identified by Multiwave. In addition, on at least one occasion an employee of Defendant traveled into New York State to demonstrate use of one of the products accused of infringement in this lawsuit. It regularly answers questions and provides support to end-users located in New York. Defendant sends "blast" emails indiscriminately throughout the United States, including emails into this District. Several of its distributors have representatives located in New York State. When inquiries come in to distributors, Defendant generates quotes for the customer, including quotes which went to customers in New York. When a device was not functioning properly while being used in New York City, Defendant authorized return of the device directly from the customer, and shipped a replacement device directly to the customer at the customer's office in New Jersey for apparent reemployment in New York.

The regular entry of infringing devices manufactured by Defendant into New York, as detailed below, shows a clear basis for jurisdiction in this District. Likewise, Defendant's

activities targeting New York make the exercise of jurisdiction fair and reasonable. Finally, it is respectfully urged that this Court should not transfer the action because the balance of applicable §1404 considerations strongly favors going forward in this Court.

B. Sunsight AAT-08/15/30 Models Have Ratchet and Pawl Tightening Mechanism

A short discussion of the simple question at issue facilitates evaluation of the venue considerations under 28 USC §1404. The complaint in the present action alleges that the Sunsight AAT-08/15/30 models of its antenna alignment tool infringe Multiwave's United States Patent No. 8,436,779 (the "'779 Patent"). The '779 Patent is drawn to an instrument which comprises a metal box which measures the orientation of a cell phone antenna and a strap which secures the box in place using a specific strap closure mechanism.

1.   The Essential Evidence in an Apparatus Patent Infringement Action

Patents may be apparatus patents that protect mechanical devices, as here, or they may be method patents that deal with manufacturing processes.  Infringement of an apparatus patent requires that the accused product include all the mechanical elements of at least one of the claims located at the end of the patent.

Conversely, in order for a patent claim to be found invalid, all of the elements of the asserted claim must be found in a prior art device or obvious from the same.

2. Infringement Requires Only All Claim Elements in Sunsight AAT-08/15/30

Defendants have essentially conceded infringement by the Sunsight AAT-08/15/30 models, but contend that the '779 Patent is invalid because all of the elements of Claim 1 are found in Defendants' old antenna alignment tool which is (somewhat confusingly) referred to as the "AAT" (hereafter the "Old Tool").

7

<u>3. Defense Limited to Allegation "Old Tool" Meets All Claim Elements</u>

Plaintiff has responded that Defendant's invalidity argument fails, at least, because the strap closure mechanism in the Old Tool does not meet the recitations of Claim 1 of the '779 Patent. More particularly, Claim 1 requires (and the Old Tool does not have) a "***tightening*** mechanism ***operable to tighten*** and release the flexible strap." [Emphasis added]

4. Manufacture of Sunsight AAT-08/15/30 Irrelevant to Infringement, and
<u>Convenience of Witness with That Knowledge Is a Frivolous Argument</u>

Defendant contends that venue in Orlando, Florida is appropriate because its nonparty witness Scott Campbell manufactured the brackets which cooperate with the tightening mechanism for both the Old Tool and the Sunsight AAT-08/15/30.

First of all, the bracket itself is irrelevant to the tightening mechanism at issue, and the assertion of such an argument is remarkable.

Second, an apparatus patent is at issue. Accordingly, the method of manufacture of the bracket, or even the tightening mechanism, is not relevant to anything.

It is telling that Defendant's argument under §1404 begins on such a specious note.

<u>5. Only Rocker-Gripper Structure Affects Validity and Likely To Be Stipulated</u>

Rather, on the question of validity, the only issue is the ***structure*** of the Old Tool, and specifically its rocker-gripper structure meets the claim limitation. More particularly, Claim 1 claims a mechanism operable to tighten and release the strap. The Old Tool does have a strap and a ***closure*** mechanism. But a simple closure mechanism is not a ***tightening*** mechanism. The closure mechanism consists only of a rotatably mounted rocker with a knurled gripping surface which is pressed by a spring against the strap to hold it in position, when the rocker is in the

8

locking position. When the rocker is put in the release position the gripping surface moves away from the strap which releases the strap and allows the strap to be loosened.

### 6. Old Tool Fails As Prior Art without Structure to Tighten *and* Release

To harken back to the language of the claims, the claims of the patent at issue require a securing mechanism operable to ***tighten*** and ***release***. Accordingly, ***alleged prior art will fail without that feature***. The Old Tool mechanism will ***release*** the strap but it ***will not tighten*** it. Testimony respecting manufacture of a part (supposedly planned by Defendant to be provided by a reluctant third-party witness) is irrelevant to the question at hand because the Old Tool has no tightening structure at all.

Rather, in the case of the Old Tool, the strap must be tightened by using one's hand to pull the strap tight solely using ***muscle power***. After the strap has been tightened under muscle power by the person doing the work (with the closure illustrated in the position on the left), while it is being manually held tight, the spring on the rocker is released into the locking position (right) causing the internal spring to push the gripping surface against the strap and hold the strap in position:



Rocker Open (Tightening Position)        Closed Pressing and Gripping Strap

## 7. Only Accused Securing Structure Is at Issue and Likely To Be Stipulated

In contrast, the accused AAT-08/15/30 models have a tightening mechanism made of a rotatably mounted **pawl** (a sort of lever) and a strap end comprising a **ratchet** with a number of teeth. The teeth are engaged by the rotatably mounted pawl. Rotation of the lever end of the pawl results in causing the other end of the pawl to engage the teeth and pull them in the direction of rotation, tightening the strap.



Tightening Mechanism in Infringing Tool

In other words, as the user grasps the pawl between his thumb and forefinger, and pulls the pawl up, the pawl is rotated about its pivot point. At the same time its free end engages the teeth of the ratchet, advancing the end of the strap and pulling the strap tight as seen in the illustrated sequence below:



Sequence Showing Infringing Tightening Mechanism Tightening the Strap

10

 8. Structure, Not Testimony on Manufacture, at Issue for Infringement

In view of Sunsight's concession of infringement, the only real question at issue in this lawsuit is validity, and that depends upon the structure of the Old Tool. But even if infringement was an issue, infringement would only depend upon the structure of the AAT-08/15/30, not the testimony of the individual who made a part, as lamely urged by Defendant.

Indeed, Sunsight has stated its defense to depend upon its allegation that: "the same (*sic*) securing means and tightening mechanisms in the admitted prior art AAT is the same as used in the current AAT."  Santurri Email, Exhibit A.

Accordingly, the development, design and manufacture of the infringing tool is not relevant to any issue in this lawsuit and the location of a reluctant witness with knowledge of the same is irrelevant to the present motion. Moreover, at this early point in the commercialization of the products, damages are not likely to be a major issue. In any case, typically, in patent cases, counsel stipulate to the authenticity of the products and to sales, leaving the issues of validity, claim interpretation and infringement to the court and expert testimony. In this case suitable expos are more likely to be located in New York.

C. Despite Denying Infringement in New York, Third Party Documents Evidence Same

A third party discovery respondant end-user  has produced documents containing GPS data and showing the infringing alignment of over 200 cellular antenna systems in New York State. These acts of infringement were committed by the end-user using its stock of four accused antenna alignment tools manufactured by the Defendant and put, by way of the stream of commerce, into New York State. Exhibit B, Decl. of D.D.

11

D. Sunsight Concedes Sunsight Instruments Is a Proper Party

There is no question but that Sunsight Instruments is a proper party in this lawsuit. Based upon the representations of Defendants it appears that Sunsight Holdings and Sunsight Industries may not be proper parties. But in the event that the Court dismisses them, it is requested that the same be without prejudice, and subject to their being added as parties upon motion in the event that discovery uncovers facts sufficient to support liability. However, Plaintiff notes that Defendants state in their Motion "Sunsight Industries sells the accused systems to customers in many states." (Dkt. No. 45, pg. 6-7). Thus, the Defendants contradict their own averments in their Motion and the distinctions between the individual defendants remain unclear.

E. National Marketing and Regular Channel to New York Establishes Jurisdiction

In a video available at https://www.youtube.com/watch?v=ffr1l7FIkIs,Tony Wattwood, Defendant's CEO, notes that his product is available in the US and globally, and is approved by all the major carriers, including Verizon, AT&T, T-Mobile, and Metro PCS, all of which operate throughout New York State, including in this District. By targeting end-users who serve these carriers, Defendant clearly evidences its national marketing effort to include New York State.

In addition, far from being a local player in Florida, Defendant has obtained approvals from European authorities as evidenced by the Business Wire article (Exhibit C), quoting Mr. Wattwood admitting that Defendant has obtained approval to use the CE marking allowing sales into the European Union. Defendant is thus also operating in the international commerce of the United States. Moreover, at page 49 of her deposition (Exhibit D), Defendants' Nicole Icovitti acknowledged the national nature of sales efforts noting that when she does sales work she doesn't care where the person is located. Moreover, she acknowledged that there was no effort to

avoid marketing into New York State in the national marketing effort. Icovitti deposition, page 49.

As illustrated in demonstrative Exhibit E, Defendant has established channels of distribution into New York State implemented by a series of activities specifically targeting New York State.  While Defendant seeks to excuse these activities by characterizing some of them as "blast emails," the distinction is nonsensical. Essentially, Defendant is asking the court to ignore the activity because it is a large-scale activity, and that this is different from small-scale individual contacts with New York State. In essence, the rule which defendant espouses is large-scale activities don't count, but less activity does confer jurisdiction.

As is illustrated clearly in Exhibit E, given the level of activity in New York State, and the infringing products which reached New York (and Defendant's awareness of the same), there is no question but that Defendant could fairly have anticipated its being hailed into court in New York State. To hold otherwise would suggest that any company that did business strictly through middlemen could never be hailed into court anywhere outside its home jurisdiction. Moreover, this would run directly contrary to *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F. 3d 1558 (CAFC 1994), where the Federal Circuit defined the jurisdictional requirement. "Plaintiff has stated all of the necessary ingredients for an exercise of jurisdiction consonant with due process: defendants, acting in concert, placed the accused fan in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there."

While begrudgingly admitting that *Beverly Hills Fan* has not been modified by *J.McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011), it suggests that the decision is on shaky ground and invites this Court to rule as the Federal Circuit has declined to rule. In any case, even

if J *McIntyre* were a majority opinion, jurisdiction would still apply in this case. The plurality's proposed test was focused on displacing the "foreseeability" standard established by Justice Brennan in *Asahi Metal  Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987), and replacing it with a test that beefed up based on the "something more" test advocated by Justice O'Connor's *Asahi* plurality opinion. *See J. McIntyre*, 131 S.Ct. at 2788-89. But something more occurred here.

F. Defendant Has Committed Infringement in New York by Demonstrating Product in Rochester

Returning to the present case, infringement in New York State is not due to "unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale." *Asahi*, 480 U.S. 102 at 112. – *See* also *Robert Bosch LLC v. Alberee Products Inc*., 70 F.Supp. 3d 665, 668 (D. Del. 2014 (sale to national resellers servicing all of the United States enough to support jurisdiction). Moreover, "something more" also exist here, namely committing infringement at demonstrations in New York and numerous marketing, service, return and support activities aimed specifically at New York.

The various contacts with New York State shown in Exhibit E were attested to during the deposition of Nicole Icovitti, operations manager for all three of the Defendants, relevant excerpts of which are included in Exhibit D.



On page 21-22, (a)[1] she acknowledges receiving a POS report from her distributor Talley,

that she gets such point-of-sale reports regularly and that the same show (b) sales in New York

State. The sale is confirmed by an affidavit from distributor Talley, Exhibit F. On page 19,

Icovitti admitted that (c) she was aware that Mr. F was the sales coordinator for New York State

for Defendant's customer Talley. Defendant also acknowledges (d) having a sales representative

in Rochester, New York. Exhibit G. On page 23-26, Icovitti acknowledges a calendar event for a

meeting for Andrew Malakoff, (e) which was to be a product demonstration of an accused

antenna alignment device held in Rochester, New York, and that Mr. Malakoff, an employee of

Defendant, attended that demonstration in Rochester. As a result of that meeting, Icovitti

prepared a quote for one of the attendees at the demonstration, knowing that the attendee was

located in Rochester, New York. See pages 30-31. Icovitti further admits that with respect to a

---

[1] Parenthetical references are to letter notations in Exhibit E, reproduced above without
confidential information.

product accused of infringement in this lawsuit (page 60), (f) Defendant received a report of the

problem being encountered with one of the products accused of infringement in this lawsuit

being worked on in New York City (page 61-64). The instrument was returned directly to

Sunsight which shipped a replacement to the customer. Exhibit B. Icovitti further admitted that

on July 16, 2015 (g) she sent an email to a customer in Astoria, Queens, New York trying to sell

one of the products accused of infringement in this lawsuit. Moreover, that customer, Mr. S G,

years before, had purchased an Old Tool (Icovitti deposition, p. 47-49), showing the established

nature of the stream of commerce used by Defendant in selling its products. At pages 51-53,

Icovitti acknowledged preparing and sending a quote from one of the accused devices to Mr. S

G. Icovitti further admitted (h) sending an email to CC located in College Point, New York

(Icovitti deposition pages 35-36). Icovitti further admitted on page 44 of her deposition that in

her email blasts, there was no effort to avoid sending emails into New York State or any other

place. She further acknowledged she understood the product to be in New York City, but

protested that New York City included New Jersey in her understanding of the term (page 64-

65). Icovitti further testified at page 64 of her deposition that (i) she sent an email to a customer

in Warwick, New York explaining GPS calibration (p. 65, Icovitti deposition).

II. STAGE OF THE PROCEEDING

Defendants' have filed a motion to dismiss or transfer venue based on lack of contact

with the State of New York.  Defendants have also moved, in the alternative, for transfer of the

case to Florida, where witnesses involved in the design and manufacture of the accused product

are located, and where sales records are located, despite largely acknowledged inconvenience

and expense to the Plaintiff of longer travel, retaining, educating and employing a second local

law firm in tandem with the undersigned, despite rampant infringement in New York State and despite the fact that Defendant is about three times the size of Plaintiff.

III. LAW AND ARGUMENT

A. Defendants' Motion Is Specious, Falsely Stating CPLR 302 Has Two Grounds for Jurisdiction When an Unmentioned Third Ground Supports Jurisdiction

1. Legal Standards for Dismissal under Rule 12(b)(2) Have Not Been Met

Specific personal jurisdiction depends upon the New York long arm statute, N.Y. C.L.P.R. § 302, as limited by due process. In ruling on a motion to dismiss for lack of personal jurisdiction, the Court "construe[s] the pleadings and affidavits in the light most favorable to plaintiff[], resolving all doubts in [its] favor." *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008).

Defendant contends that Plaintiff's does not allege facts sufficient to satisfy specific jurisdiction. Dkt. No. 45, pg 9. However, Plaintiff has alleged in its complaint "Defendants have… infringed… and/or … ***induced infringement*** of Multiwave's '779 Patent." Dkt. No. 9, ¶ 7. Moreover far from being conclusory, photographs of the infringing product are included in the Complaint.

Further, Plaintiff has alleged in paragraphs 3-5 that each of the defendants "is presently manufacturing, selling, offering for sale *in the U.S.* antenna alignment tools that infringe one or more claims of the '779 Patent." (emphasis added). Under *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558 (Fed. Cir. 1994), such activities in the US placing accused alignment devices into New York via the stream of commerce support jurisdiction in New York, and were such that defendants should reasonably have anticipated being brought into this Court. Evidence uncovered during jurisdictional discovery, as detailed above, unquestionably support

jurisdiction over Defendant Sunsight in this Court, which is all that is required at the pleading stage of an action as Plaintiff could not have known the full extent of Defendants' action without discovery.

## 2. Defendant Mischaracterizes C.P.L.R. §302(a), Omitting §302(a)(3)

### a)  Tort outside State Causing Injury in State confers §302 (a)(3) Jurisdiction

Under C.P.L.R. § 302 (a)(3) "a court may exercise personal jurisdiction over any non-domiciliary… who in person or through an agent… commits a tortious act without the state causing injury to person or property within the state. "Moreover, action(s) by a non-domiciliary need not be continuous or systematic if the suit arises from those transactions." *SHLD, LLC v. Hall*, No. 15 Civ 6225 (LLS) SDNY Feb. 17, 2016. "[P]roof of one transaction in New York is sufficient to invoke jurisdiction [under 302(a)(1)], even though the defendant never enter[ed] New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp*., 71 N.Y.2d 460, (1988).

In any case, in the present action, Defendants have acted alone ***and*** through various agents to sell, ship, distribute, and induce infringing use of the accused tools in New York. Thus purposely availing themselves of the privilege of conducting activities within the State of New York and thereby invoking the benefits and protections of its laws.

Defendants utilize at least 11 national distributors located throughout the United States. One such distributor is Talley, Inc. Talley purchased ten AAT-30 products from Defendants, one of which it shipped to a customer located in Mastic, New York on January 7, 2016. Talley Decl. Exhibit F.

18

     i.    <u>Defendant's Activities through its Distributors.</u>

Defendants' other distributors are all national distributors who sell products throughout the US. Two such distributors are TRS RenTelco and Primus Electronics, which both offer defendant's infringing products on their websites. Exhibits H and I.

     ii.    <u>Defendant's Activities through its own employees.</u>

Defendants Vice President of Sales, Andrew Malakoff conducted product demonstrations in in Rochester, NY. Malakoff was also in communication with a sales rep in Rochester. Further, Ms. Icovetti was involved in communicating with customers located in W_____, M_____, Queens, and College Point New York for sale of infringing product.

     iii.    <u>Defendant'sinfringing activities directly through its Customers.</u>

I_____, Inc. located in New Jersey purchased a total of four infringing products. The first device was purchased on December 4, 2015 through a distributor. D D Decl. Exhibit B. Two more infringing devices were purchased directly from Sunsight Instruments on January 27, 2016. D D Decl. Exhibit B.  A fourth AAT-30 device was purchased directly from Sunsight Instruments on February 19, 2016. D D Decl.  These four devices have been used by Ironbo, Inc. to align over 200 cellular antennas in New York, mostly in the New York City metropolitan area. D D Decl.

     <u>(b) Defendant's Actions Meet Solicitation Standard of 302(a)(3)</u>

As detailed above, defendants regularly solicit business in the State of New York through product demonstrations put on by its employees and through its sales representatives located in New York. Further, as detailed in the declration of Nicole Icovitti, defendants regularly solicit business in the State of New York through email. Icovitti Decl., Dkt 46.

In addition to defendants' activities in the United States, Defendants also sell their infringing devices in Europe and such exports constitute patent infringement. Exhibit J.

Clearly, Defendant regularly solicits business in the state through blast emails, employee travel on sales calls in New York State, sales to national distributors, servicing customers in the field, providing information to users of infringing products in the state, responding to sales leads and so forth, and thus meets the requirements of §302 (a)(3).

B. Defendants Should Not Be Dismissed For Improper Venue.

Section 1391(c) applies to all of chapter 87 of title 28, and thus to § 1400(b), as expressed by the words "For purposes of venue under this chapter. . . . [t]here can be no mistake about that." *VE Holding Corp. v. Johnson Gas Appliance Company*, 917 F.2d 1574, 1580 (CAFC 1990). In *VE Holding*, the Court of Appeals for the Federal Circuit noted that §1391 (c) of the venue chapter redefined the term "reside" as it is used in §1400 (b). The general venue statute provides that "[f]or purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *Kun Shan Ge RuiTe Tool v. Mayhew Steel Products*, 821 F. Supp 2d 498, 501 (Dist. Conn. 2010) (citing 28 U.S.C. 1391(c) (2006). Thus, a defendant "resides" in any jurisdiction in which it is subject to personal jurisdiction. *Id*. As detailed above, defendants are subject to personal jurisdiction under CPLR 302, and thus reside in this judicial district.

C.   28 U.S.C. §1404 Militate against Transfer.

1. Legal Standards for Transfer.

"District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).

2. The 1404(a) Factors Favor Transfer.

It is black-letter law that where venue is properly set, a court will "not disturb Plaintiff's choice of forum unless the defendant makes a clear and convincing showing that the balance of convenience favors the defendant's choice." *Hall v. South Orange, Franklin Twnshp*., 89 F.Supp.2d 488, 494 (SDNY 2000); *Atlantic Recording Corp. v. Project Playlist, Inc*., 603 F. Supp. 2d 690, 698 (S.D.N.Y.2009). *See* also *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) ("strong presumption in favor of the plaintiff's choice of forum"). "Absent proof that plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons, factors relating to convenience or expense generally weigh heavily in favor of the plaintiff's choice." *Holding, Ltd v Chase Manhattan Bank*, 329 F.3d 64, 71 (2d Cir. 2003).

Plaintiff has not chosen to file suit in this District as a result of forum shopping. but simply because its United States counsel, the undersigned, has a 10 year working relationship in patent matters with Multiwave's Canadian patent counsel who was also responsible for prosecution of the patent in suit, and is admitted in this District where it was believed infringement was highly likely, as has been proven out in jurisdictional discovery, with at least hundreds of cellular antennas aligned using the infringing tool in New York.  See Handal Declaration. Exhibit K.

a) Defendant Is About Five Times As Large As Plaintiff

In his declaration, Bruce Clifford, president of Multiwave reports 2014 revenue for Multiwave was the equivalent of $1,067,238. Exhibit L. In contrast, Inc. Magazine reports Defendants' 2014 revenue as being $5.4 million dollars. Exhibit M. While Defendant complains Plaintiff's response to some unidentified document request asking for documents supporting the

assertion that defendant is far bigger than Multiwave, this court gave Defendant no right to discovery, but only ordered that "Plaintiff may seek jurisdictional discovery for the purpose of determining whether the Court has personal jurisdiction over Defendants in this action." Dkt. No. 18. Defendant never challenged the production of financial information to Defendant and other extensive production (despite Defendant's plain disregard of this Court's order), and if it did have a right to discovery Defendant never noticed any depositions to explore this or any other issue. In any case, there is no prejudice, because Defendant can reply to the evidence on the basis of its own financial records.

b) Relative Costs of Counsel in New York in Florida Is Specious Argument

The average hourly rate of New York attorneys in Defendants' §1404 argument is not honestly relevant since Defendants' Florida counsel is admitted *pro hac vice* in this District.

On the other hand, to litigate in Florida, Plaintiff will have to retain another law firm. Thus, this factor weighs in favor of plaintiff.

c) On Convenience of the Parties Defendants Improperly Compare Travel Time from New York.

"The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 399 (S.D.N.Y. 2014). Thus, travel times from Bolton, Ontario are the proper measure. Bolton to New York is 502 miles, while Bolton to Orlando is 1291 miles. Moreover, where the movant has an extensive nationwide network, the scale tilts slightly in favor of the nonmovant. *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 134. Even where this not the case, "[w]here the balance of convenience is in equipoise, plaintiff's choice of forum should not be disturbed." *Ayers v. Arabian American Oil Co.*, 571 F.Supp. 707, 709 (S.D.N.Y. 1983).

Moreover, as detailed in the declaration of Bruce Clifford, Exhibit L, Defendant regularly attends national trade shows throughout the United States, and knows Defendant's distributors to be national distributors, evidencing the nationwide nature of its business and its customary travel throughout the United States.

Thus, generally, change of venue increases inconvenience for Multiwave and this factor favors Multiwave.

d) The Convenience of Witnesses Favors Transfer

Defendants can only identify a single non-party witness whom they cannot even say for certain will or will not agree to testify for them. Moreover, being only the maker of a part not at issue Mr. Campbell's testimony is irrelevant. Thus, this factor favors New York.

e) The Locus of Operative Facts Favors NY Jurisdiction

There are no operative facts at issue. The question is whether the prior art device anticipates the patent in suit. Defendant's argument is specious and this factor weighs against transfer.

f) Evidence Consists of Electronic Documents and Two Products of Defendant

The arguments made by Defendant respecting location of documents again is specious, as electronic documents are easily moved anywhere.

g) No Relevant Nonparty Witnesses and Defendants Argument Is Specious

Respecting availability of process, this is a specious issue. Again, Defendants can only identify a single reluctant non-party but his testimony respecting manufacture is completely irrelevant. Thus, this factor favors New York. On the other hand, needed expert witnesses will more likely be found in New York, as compared to Orlando.

23

<u>h) New York Has a Strong Interest in Policing Infringement in Its Borders</u>

Hundreds of acts of infringement aligning cellular antennas in New York have been committed. New York has an interest in not being a patent infringers haven.

<u>3. Balancing the 1404(a) Factors Establishes That a Transfer is NOT Proper.</u>

As can be seen from the above analysis, the only result of a transfer will be to shift the cost of airline tickets from Defendant to Multiwave. Given its much greater size, Defendant can easily bear this burden. Moreover, any transfer would increase the effectiveness of procedural gamesmanship on the part of Defendant, which is illustrated by the Defendant's, while this Court was deciding the present motion, on its own filing a parallel action in Florida. Baseless rule 11 threats against counsel were also a part of this mix. Its obstructive stance in this lawsuit is already further demonstrated by its bald assertion that the prior art and infringing mechanisms, described above, are the same. Exhibit A. Moreover, further obstructive behavior was evidenced by repeated demands that the lawsuit be withdrawn while not cooperating with providing a sample of the structure which it said rendered the patent in suit invalid. Exhibit N.


IV. CONCLUSION

Defendants knew they were doing business in New York via the stream of commerce, and that numerous actions of infringement were being induced by Defendant in New York on

account of its sales of infringing products. Defendants' motion should be dismissed and this action should move forward on the merits in the Southern District of New York.

Dated: September 23, 2016                    Respectfully submitted,


/s/ Anthony H. Handal
Anthony H. Handal
handal@HandalGlobal.com
**Handal & Morofsky, LLC**
420 Lexington Avenue,
Suite 300,
New York, NY 10170
Phone: 917-880-0811

**Attorneys for Plaintiff,
Multiwave Sensors, Inc.**


Certificate of Service

The undersigned hereby certifies that the within document was served upon all counsel of record by filing with the Court's electronic filing system.

/s/ Anthony H. Handal


Anthony H. Handal

25