USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 04/26/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MULTIWAVE SENSOR INC.,

                            Plaintiff,

                  -v -

SUNSIGHT INSTRUMENTS, LLC, SUNSIGHT
INDUSTRIES, LLC, and SUNSIGHT
HOLDINGS, LLC,

                          Defendants.
-----------------------------------------------------------------X

1:16-cv-1361-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

## I. INTRODUCTION

Defendants Sunsight Holdings, LLC, Sunsight Industries, LLC, and Sunsight Instruments, LLC (collectively, "Sunsight") bring this motion to dismiss Plaintiff Multiwave Sensors, Inc.'s ("Multiwave") complaint for lack of personal jurisdiction, or in the alternative, to transfer venue to the U.S. District Court for the Middle District of Florida. Because there is a sufficient allegation that a tortious act of patent infringement occurred in this state, this Court has jurisdiction over one of the defendants, Defendant Sunsight Instruments, and Defendants' motion to dismiss is denied. However, because the relevant witnesses and discovery are located in Florida, because the locus of operative facts is located there, and because there is a related case rapidly proceeding in the Middle District of Florida, Defendants' motion to transfer venue to that district is granted.

## II. BACKGROUND

Plaintiff Multiwave is a Canadian company with offices in Ontario, Canada. *See* Compl., Dkt No. 5, at ¶ 1. Multiwave is a manufacturer of various tools and instruments, including the instrument at issue—an antenna alignment device. As alleged in the complaint, Multiwave owns U.S. Patent No. 8,436,779 (the "'779 Patent"), a patent for an antenna alignment tool that aligns antennas such as those used by cellular telephone providers.

The Defendants are all Florida companies with offices in Florida. *Id.* at ¶ 2. Sunsight manufactures and sells various models of an antenna alignment device, known as the Antenna Alignment Tool ("AAT"). Recently, Sunsight has begun to sell new versions of these products, which incorporate a bracket arm used to attach the alignment tool to an antenna. These AATs, the complaint alleges, infringe upon Multiwave's '779 patent. *Id.* at ¶¶ 17-18.

On February 23, 2016, Multiwave initiated this litigation against Sunsight for patent infringement in violation of 35 U.S.C. § 271 in the Southern District of New York. In May 2016, Sunsight brought litigation against Multiwave in the Middle District of Florida, seeking declaratory judgment of non-infringement of the '779 patent, as well as declaratory judgment finding the '779 patent to be invalid and unenforceable. *See Sunsight Instruments, LLC v. Multiwave Sensors, Inc.*, 6:16-cv-00818-ORL-31-DAB (M.D. Fla.) ("M.D. Fla. Litig., 16-cv-00818").

From May through August 2016, the parties engaged in jurisdictional discovery. On September 2, 2016, Sunsight brought a motion to dismiss for lack of personal jurisdiction, or, in the alternative, to transfer the venue of this case to the Middle District of Florida. For the reasons stated below, Defendants' motion to dismiss is denied, and Defendants' motion to transfer venue is granted.

### III. JURISDICTIONAL ALLEGATIONS

In support of their motion, Defendants submitted a declaration from Nicole Icovitti, Operations Manager for all three named Defendants. Decl. of Nicole Icovitti, Dkt. No. 46 ("Icovitti Decl."), at ¶ 2. Ms. Icovitti explains that two of the Defendants—Sunsight Holdings, LLC and Sunsight Industries, LLC—are both holding companies that do not develop, manufacture, advertise, or sell any product or service. *Id.* at ¶¶ 14, 18. The declaration further explains that Defendant Sunsight Instruments, LLC does sell and manufacture the accused product, but avers that this Defendant never sold this product in New York. *Id.* at ¶¶ 24, 27. Plaintiff does not present any evidence demonstrating that Sunsight Industries or Sunlight Holdings sell or manufacture the

products at issue in this case, or that the contacts with New York Plaintiff attributes to Defendants generally were made by any Sunsight entity other than Sunsight Instruments.

Plaintiff submitted two terse affidavits in support of Plaintiff's jurisdictional allegations. One affidavit, from Plaintiff's president, notes that he attended trade shows where distributors sold the alleged infringing AAT products. *See* Pl.'s Opp'n, Ex. L. The affidavit does not provide any information about the location of those trade shows, but states that one company he has communicated with sells Sunsight's AAT products on their websites, which New York residents can access. *Id.* at ¶ 9. The second affidavit, from Plaintiff's counsel, states that "jurisdictional discovery has confirmed those suspicions [that infringement was occurring in New York State] with the knowledge that over 200 cellular telephone antennas were infringingly aligned using the finest [sic] accused of infringement in this lawsuit." Pl.'s Opp'n, Ex. K at ¶ 5. Plaintiff also submitted multiple exhibits to its opposition motion, but did not provide an affidavit describing the exhibits or attesting to their validity.[1] The following facts are drawn from the Court's reading of the exhibits submitted with Plaintiff's opposition to Defendants' motion.

First, Plaintiff provided an affidavit from an executive of a third-party management services company as evidence supporting personal jurisdiction here. *See* Pl.'s Opp'n, Ex. B. This executive, whose company is located in New Jersey, states that his company's use of instruments such as Sunsight's AAT-30 "has brought us to New York State to use the Sunsight AAT-30." *Id.* at ¶ 4. Additionally, after a problem occurred with one of the Sunsight devices, this company received a replacement device from Sunsight Instruments, which was delivered to the company's offices in New Jersey. *Id.* at ¶¶ 8-9. The affidavit then contains over twenty-one pages showing when this

---

[1] Southern District of New York Local Rule 7.1(a)(3) requires that all motion papers filed with this Court contain "[s]upporting affidavits and exhibits *thereto* containing any factual information and portions of the record necessary for the decision of the motion" (emphasis added). That Plaintiff did not attach its exhibits to an affidavit that attested to the documents submitted is a surprising departure from standard practice. The Court has accepted these exhibits, but notes that Plaintiff's failure to follow this requirement could have served as a basis for the Court to disregard all facts submitted by Plaintiff.

3

company used its Sunsight AAT devices to align satellites in New York—perhaps the "over 200 cellular telephone antennas" referred to in Plaintiff's counsel's short affidavit. *Id.* at ¶¶ 12-15.

In another affidavit, the chief administrative officer of Talley, Inc., a California company, explains that Talley received ten AAT-30 products from Sunsight Instruments. These AATs were shipped from Sunsight Instruments in Florida to Talley's Olathe, Kansas distribution center. Pl.'s Opp'n Ex. F at ¶¶ 2-3, Ex. B. Talley thereafter sold one of those products to a customer in New York State. *Id.* at ¶ 5, Ex. C.

In addition, Plaintiff submitted evidence showing that around April 2016, Andrew Malakoff, Vice President of Sales for Sunsight Instruments, demonstrated one of the alleged infringing products to a potential customer in Rochester, New York. Pl.'s Opp'n, Ex. D (Icovitti Dep. Tr.) at 21-25; Ex. G. Defendant's employee performed this product demonstration together with an independent sales representative from another company, Tera Technologies. *Id.* Ms. Icovitti subsequently generated a price quote for an interested customer in New York who had attended the demonstration. Icovitti Dep. Tr. at 30-31.[2] Defendants' declaration in support of its motion to dismiss contends, however, that no sale resulted from this demonstration. Icovitti Decl. at ¶ 29. Nothing in Plaintiff's opposition or the exhibits in support of that opposition suggest that such a sale did occur.[3]

Plaintiff's evidence also highlights a smattering of individual emails that were sent into New York State by a Sunsight entity, for instance an email sent to a customer located in Astoria, New York who had purchased a "classic AAT" device previously. Icovitti Dep. Tr. at 47. Portions of a deposition transcript further indicate that Ms. Icovitti sent a "sales blast email" to someone located

---

[2] Because Defendants' uncontroverted declaration notes that Sunsight Instruments was the only named Defendant that sells products, the Court understands that Ms. Icovitti created the price quote for a prospective sale while acting in her capacity as Operations Manager of Defendant Sunsight Instruments.
[3] Plaintiff argues that Defendant "also acknowledges . . . having a sales representative in Rochester, New York." However, the exhibit cited to as evidence for this shows that the Rochester-based sales representative was an employee of Tera Technologies, not Defendants. Pl.'s Opp'n, Ex. G.

4

in New York, but that she did not know of the customer prior to sending that email. *Id.* at 35. Finally, the same deposition testimony indicates that another email was sent to a customer in Warwick, New York concerning GPS calibration of a Sunsight product. *Id.* at 65. There is no context within the excerpted deposition transcript to indicate whether the assistance provided was for one of the allegedly infringing products, and, if so, whether the relevant New Yorker was sold such a product by Sunsight.

## IV. LEGAL STANDARD FOR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

It is well established that, on a motion to dismiss pursuant to Rule 12(b)(2), the "plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam)); *see also Bank Brussels Lamberts v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) ("When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant.") (citations omitted). To defeat a jurisdiction-testing motion, the plaintiff's burden of proof "'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).

At the pleading stage—and prior to discovery—a plaintiff need only make a *prima facie* showing that jurisdiction exists. *Id.* at 84-85; *see also Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167-68 (2d Cir. 2015) ("'In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists.'") (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013)). "In the instant case, the parties have conducted extensive discovery regarding the defendant's contacts with the forum state, but no evidentiary hearing has been held. Accordingly, 'plaintiff[s'] *prima facie* showing, necessary to defeat a

5

jurisdiction testing motion, must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant.'" *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567 (2d Cir.1996)).

Courts may rely on materials outside the pleading in considering a motion to dismiss for lack of personal jurisdiction. *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). "'The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.'" *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993)). If the parties present conflicting affidavits, however, "all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Seetransport Wiking*, 989 F.2d at 580 (citations omitted).

In a case involving a federal question, a district court determines whether it has personal jurisdiction over a non-domiciliary using a two-step inquiry. *Licci*, 732 F.3d at 168 (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 243-44 (2d Cir. 2007)). First, the court "look[s] to the law of the forum state to determine whether personal jurisdiction will lie." *Id.* If so, then the court must "consider whether the . . . exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution." *Id.*

New York's long-arm statue provides that:

> [A] court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or (3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered,

in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . .

New York Civil Practice Law ("CPLR") § 302(a).

If the long-arm statute permits personal jurisdiction, the court must then analyze two "related components" of the due process inquiry. *See Chloe v. Queen Bee*, 616 F.3d at 164. First, the court must determine whether the defendant has sufficient "minimum contacts" with the state. *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Here, the Court construes Plaintiff's complaint as asserting "specific jurisdiction," that is, when "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8 (1984). Second, the Court must analyze the "reasonableness" of the application of personal jurisdiction to assess whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (quoting *Daimler AG v. Bauman*, 134 S.Ct. 736, 754 (2014)). To do so, a court must evaluate the following factors:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Chloe v. Queen Bee*, 616 F.3d at 164-65 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113-14 (1987)).

V.  **DISCUSSION**

Plaintiff does not explicitly assert that jurisdiction is proper under any particular sub-section of the New York long-arm statute. Defendants argue that personal jurisdiction does not exist under subsections (a)(1) and (a)(2), and Plaintiff chides Defendants for "mischaracterizing" CPLR § 302(a) by "omitting" subsection (a)(3) from its analysis. As a threshold matter, the Court finds that Plaintiff has not met its burden of showing that either Sunsight Holdings, LLC or Sunsight

7

Industries, LLC has sufficient contacts with New York to justify the exercise of personal jurisdiction under any prong of the New York long-arm statute. All relevant contacts alleged in Plaintiff's opposition relate to Sunsight Instruments, and as such, the Court only considers personal jurisdiction as to this entity. Because the Court finds that section 302(a)(2) confers personal jurisdiction over Sunsight Instruments, it will not analyze whether jurisdiction is proper pursuant to the other prongs of the New York long-arm statute.

CPLR section 302(a)(2) provides that a defendant may be subject to jurisdiction in New York State if he "commits a tortious act within the state." This section "requires no specified level of activity within the state, but only that plaintiff suffer some damage as a result of a tortious act committed" within the jurisdiction. *Millennium, L.P. v. Dakota Imaging, Inc.*, No. 03-civ-1838, 2003 WL 22940488, at *5 (S.D.N.Y. Dec. 15, 2003) (citing *Rocket Jewelry Box, Inc. v. Noble Gift Packaging*, 869 F. Supp. 152, 156 (S.D.N.Y. 1994)).

Patent infringement occurs when someone without authority "makes, uses, offers to sell, or sells any patented invention . . . ." 35 U.S.C. § 271(a). As such, courts in this district have held that a tortious act of patent infringement occurs, for the purposes of CPLR § 302(a)(2), "where products are distributed and infringing sales are made." *Millennium v. Dakota*, 2003 WL 22940488, at *5; *see also Stephan v. Babysport, LLC*, 499 F. Supp. 2d 279, 288 (E.D.N.Y. 2007) ("The holder of a patent suffers economic loss at the place where the infringing product is sold as he or she loses business there."). Offering infringing goods, even without an actual sale in the state, is sufficient to meet this requirement. *See Millennium v. Dakota*, 2003 WL 22940488, at *5 ("Focusing on a need for actual sales would lead to the absurd result of rewarding unsuccessful infringers and only penalizing successful ones . . . .").

Here, Plaintiff presents evidence that Sunsight Instruments offered one of the allegedly infringing antenna aligning tools in New York State by demonstrating the product in Rochester, New York, and that a Sunsight Instruments employee allegedly generated a price quote for a

8

customer in New York. Although there is no evidence that either the product demonstration or the quote resulted in a sale within the state, because patent infringement occurs upon an offer to sell infringing products, the Court finds that Plaintiff has shown that the Court has personal jurisdiction over Sunsight Instruments under section 302(a)(2) of the New York long-arm statute.

Now that the Court has determined that Defendant Sunsight Instruments' actions within the state permit the exercise of personal jurisdiction under state law, it must next determine whether the exercise of jurisdiction comports with constitutional due process. The first prong of the due process inquiry requires finding that the defendant has "certain minimum contacts" with the forum. *Licci*, 732 F.3d at 169 (citing *Int'l Shoe*, 326 U.S. at 316). The Second Circuit has found that minimum contacts necessary to support jurisdiction exist "where the claim arises out of, or relates to, the defendant's contacts with the forum" and "where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Licci*, 732 F.3d at 170 (quoting *Bank Brussels Lambert*, 305 F.3d at 127). Here, Plaintiff's claim for patent infringement against Sunsight Instruments directly relates to Sunsight Instruments' offer to sell the allegedly infringing product in New York State. By physically entering New York State and offering to sell this product, and by producing a price quote in an attempt to secure a sale of an AAT to a New York customer, Sunsight Instruments purposefully availed itself of the privileges of this forum.

Once minimum contacts between a defendant and the forum are established, a court must then determine whether exercising jurisdiction based on those contacts would be "reasonable" by considering the factors enumerated above. *See Chloe v. Queen Bee*, 616 F.3d at 164-65. Here, although Defendant Sunsight Instruments is located in Florida, the burden of jurisdiction is not so great as to render this forum unreasonable. *See Licci*, 732 F.3d at 174 (finding the exercise of jurisdiction over a defendant located in Lebanon to be consistent with due process protections). Further, New York State has an interest in adjudicating potential patent infringement that occurs within this forum. Based on these factors, along with the existence of Sunsight Instrument's minimum contacts with

9

New York, the Court concludes that the exercise of personal jurisdiction over Sunsight Instruments would not offend principles of fair play and substantial justice. As such, personal jurisdiction over this Defendant is consistent with the Due Process Clause of the U.S. Constitution, and is proper here. Because the Court concluded that the New York long-arm statute does not confer personal jurisdiction over Defendants Sunsight Holdings and Sunsight Industries, however, jurisdiction is not proper as to those two Defendants.

## VI. LEGAL STANDARD FOR MOTION TO TRANSFER VENUE

Defendants argue that, in the alternative, the Court should transfer this action to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a). Because a transferring court need not have personal jurisdiction over a defendant to transfer the case, rather than dismissing the case as to Sunsight Holdings and Sunsight Industries for lack of personal jurisdiction, the Court will consider the question of venue transfer as to the entire case. *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 741 (S.D.N.Y. 2013). Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

In deciding a § 1404(a) motion to transfer, the first question a Court must ask is whether the case could have been brought in the proposed transferee district. *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 285 (S.D.N.Y. 2004). "An action 'might have been brought' in the forum to which the movant seeks to transfer it if subject matter jurisdiction, personal jurisdiction, and venue would have been proper in the transferee court at the time of filing." *City of Pontiac Gen. Emp. Ret. Sys. v. Dell Inc.*, No. 14-cv-3644, 2015 WL 12659925, at *2 (S.D.N.Y. Apr. 30, 2015). Here, it is clear that Plaintiff, a foreign corporation, could have brought its claims for patent infringement under 35 U.S.C. § 271 in the Middle District of Florida, where Defendants are located.

Having satisfied that threshold inquiry, the Court must evaluate the following factors to determine whether to grant a motion to transfer venue:

> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*Steck v. Santander Consumer USA Holdings Inc.*, No. 14-CV-6942, 2015 WL 3767445, at *2 (S.D.N.Y. June 17, 2015) (quoting *Ritchie Capital Mgmt., L.L.C. v. U.S. Bank Nat. Ass'n*, No. 14 CIV. 8513, 2015 WL 1611391, at *1 (S.D.N.Y. Apr. 10, 2015)).

The list of factors is not exhaustive, *see Pausch Med. GmbH v. Pausch LLC*, No. 14-cv-1945, 2015 WL 783365, at *1 (S.D.N.Y. Feb. 24, 2015), and "[t]here is no rigid formula for balancing these factors and no single one of them is determinative." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000). Rather, "weighing the balance is essentially an equitable task left to the Court's discretion." *Id.* (internal quotation marks omitted). District courts have broad discretion in deciding, on a case-by-case basis, to transfer the venue of a given litigation based on "notions of convenience and fairness." *D.H. Blair & Co, Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). "[T]he party requesting transfer carries the burden of making out a strong case for transfer," and district courts "have consistently applied the clear and convincing evidence standard in determining whether to exercise discretion to grant a transfer motion." *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (internal quotation marks and citation omitted).

## VII. DISCUSSION

### a. The Convenience of the Witnesses

"Convenience of both the party and non-party witnesses is probably the single most important factor in the analysis of whether transfer should be granted." *Steck v. Santander*, 2015 WL

3767445, at *2. In conducting this analysis, the Court "weighs more heavily the convenience of non-party witnesses than party witnesses." *McGraw-Hill Companies Inc. v. Jones*, No. 12-CV-7085 AJN, 2014 WL 988607, at *7 (S.D.N.Y. Mar. 12, 2014). The party moving for transfer "must provide the Court with a detailed list of probable witnesses who will be inconvenienced if required to testify in the current forum." *Kiss My Face Corp. v. Bunting*, No. 02-CIV-2645, 2003 WL 22244587, at *2 (S.D.N.Y. Sept. 30, 2003). The Court "does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum"; but rather "must qualitatively evaluate the materiality of the testimony that the witnesses may provide." *Herbert*, 325 F. Supp. 2d at 286.

Defendants submitted a declaration that lists a handful of Florida witnesses, including a non-party witness who manufactured the mounting bracket systems on the alleged infringing products. In its opposition, Plaintiff argues that the manufacture of the allegedly infringing product is not relevant and thus that witness' testimony should not be given particular weight. The complaint, however, explicitly alleges the addition of the bracket arm to the AAT-30 model as a way in which Sunsight infringed upon the '779 patent. Compl. at ¶¶ 17-18. Thus the convenience of this Florida-based non-party witness weighs in favor of transferring venue in this case.

    b. <u>The Convenience of the Parties</u>

"The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 399 (S.D.N.Y. 2014). Here, the Southern District of New York is inconvenient for both Plaintiff and Defendants—Plaintiff is located just under 500 miles from this courthouse; Defendant is just over 1,000 miles away. While Plaintiff is correct that litigating in Florida would require greater travel time for Plaintiff, the Court is convinced by Defendants' argument that travel time for Plaintiff will increase only nominally if it were required to travel to Florida, whereas a transfer of venue would tremendously increase the convenience for

Defendants. On balance, therefore, this factor weighs in favor of transferring the case to the Middle District of Florida.

      c. <u>The Location of Relevant Documents and Sources of Proof</u>

Relevant documents and other discovery related to the manufacture and sale of the alleged infringing products will be located with Defendants in Florida. However, because "[t]he location of documents and records is not a compelling consideration when records are easily portable," this factor does not weigh heavily in favor of or against transfer. *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 478 (S.D.N.Y. 2006); *see also McGraw-Hill Companies*, 2014 WL 988607, at *9 ("[T]his factor is entitled to relatively little weight in the modern era of faxing, scanning, and emailing documents.") (internal quotation omitted).

      d. <u>The Locus of Operative Facts</u>

"The location of operative facts is a primary factor in determining a § 1404(a) motion to transfer." *Rosen v. Ritz-Carlton Hotel Co. LLC*, No. 14-CV-1385 RJS, 2015 WL 64736, at *4 (S.D.N.Y. Jan. 5, 2015) (quoting *Whitehaus Collection v. Barclay Prod., Ltd.*, No. 11-civ-217, 2011 WL 4036097, at *2 (S.D.N.Y. Aug. 29, 2011). In the context of patent infringement litigation, courts have held that "the transferee forum is the locus of operative facts if the design, development, and some of the marketing of the product allegedly infringing plaintiff's patent occurred in the transferee forum and the designers, developers, and marketers live and work in that forum." *Millennium v. Dakota*, 2003 WL 22940488, at *7 (internal citation and quotation marks omitted); *see also Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330-31 (E.D.N.Y. 2006) ("The locus of operative facts in a patent infringement case usually lies where the allegedly infringing product was designed, developed, and produced.").

As noted above in relation to the factors concerning the location of relevant discovery and witnesses, the design, manufacture, and sale of the AAT devices took place in Florida, and thus the locus of operative facts concerning the infringement of the '779 patent is in Florida. In opposition,

Plaintiff merely contends—confusingly—that "[t]here are no operative facts at issue." Pl.'s Opp'n at 23. The locus of operative facts is located in Florida, and this factor weighs heavily in favor of transfer.

e. <u>Availability of Process to Compel Witnesses</u>

Here, although there is one identified non-party witness, Defendants admit that he has not yet refused to testify. Given these facts, this factor does not weigh strongly in favor of, or against, transfer of venue.

f. <u>The Relative Means of the Parties</u>

"Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." *800–Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 135 (S.D.N.Y. 1994). Here, both parties are small corporations. Multiwave cites a print-out from Inc. magazine—a magazine that focuses on small businesses—to show that Defendants' revenue was greater than Plaintiff's revenue three years ago. Pl.'s Opp'n, Ex. M. Nevertheless, the Court finds this factor to be neutral in this case, as this is not a situation in which the parties have profound disparities between their relative means.

g. <u>The Forum's Familiarity With the Governing Law</u>

"Familiarity with the governing law as a factor in determining transfer of venue is generally given little weight in federal courts." *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 479 (S.D.N.Y. 2006) (internal quotation marks and citation omitted). Neither party argues that this factor is applicable because both fora are equally familiar with the federal and state causes of action. The Court finds that this factor is neutral.

h. <u>Plaintiff's Choice of Forum</u>

Plaintiff's choice of forum does not weigh strongly against transfer because Plaintiff is located and operates in Canada. *See Pausch*, 2015 WL 783365, at * 1 ("[S]ince New York is not

Plaintiff's home district, little weight is afforded to its choice to litigate in this District."). Moreover, as indicated in the Court's analysis concerning personal jurisdiction, the operative facts of this case "have few meaningful connections to the plaintiff's chosen forum," and thus "the importance of the plaintiff's choice . . . measurably diminishes." *Hoadley v. MoneyGram Payment Sys.*, No. 08-civ-11192, 2009 WL 2001327, at *3 (S.D.N.Y. July 9, 2009) (citing *Harris v. Brody*, 476 F. Supp. 2d 405, 406 (S.D.N.Y. 2007)). Although a Sunsight employee performed a single product demonstration in the state, the design and development of the antenna alignment device at issue took place in Florida.

Plaintiff also contends that it chose this forum because its U.S. counsel, located in New York, has a long-standing working relationship with Plaintiff's patent counsel in Canada. However, "the convenience of counsel is not an appropriate factor to consider on a motion to transfer." *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F. Supp. 2d 433, 438 (S.D.N.Y. 2000). That Multiwave chose to bring this suit here does not weigh heavily against transfer of venue.

    i. <u>Trial Efficiency and the Interests of Justice</u>

Here, resolution of this litigation will be more efficient in the Middle District of Florida, where another case is currently pending between Plaintiff and Defendants. *See* M.D. Fla. Litig., 16-cv-00818. "Many courts have recognized that transfer is appropriate when two cases involving the same issues are simultaneously pending in different district courts." *MASTR Asset Backed Sec. Trust 2007–WMC1 v. WMC Mortg. LLC,* 880 F. Supp. 2d 418, 421 (S.D.N.Y. 2012) (citation omitted). "[T]he benefits for consolidating related cases in a common forum are often substantial. Such consolidation may advance the strong policy interests of achieving efficient pretrial discovery, avoiding duplicative litigation, and avoiding inconsistent results." *Am. S.S. Owners Mut. Prot. & Indemn. Ass'n v. Am. Boat Co.,* No. 11 Civ. 6804, 2012 WL 1382278, at *3 (S.D.N.Y. Apr. 20, 2012).

Although the litigation currently pending in the Middle District of Florida was brought by Sunsight against Multiwave, the case is clearly related because it involves the same parties, and concerns the '779 patent that is at issue in this case. Moreover, that case has advanced further than

15

the present one—a case management plan has been entered and a motion to stay was recently denied to allow merits discovery to proceed. M.D. Fla. Litig., 16-cv-00818, Dkt. Nos. 32, 40. Considerations of efficiency therefore weigh heavily in favor of transfer of venue.

## VIII. CONCLUSION

Thus, on balance, the factors considered here weigh strongly in favor of transfer. Crucially, the facts that will determine whether Sunsight's AAT device did, in fact, infringe on the '779 patent are located in Florida. The relevant witnesses are in Florida and the documents concerning the design and manufacturing of the AAT device are in Florida. Plaintiff's choice to litigate in this forum is—by Plaintiff's own admission—based on the location of counsel. This is not a basis upon which the Court can disregard the clear and convincing evidence Defendants have presented to justify a transfer of this litigation to another district court. Defendants' motion to transfer venue is GRANTED, and this case is hereby transferred to the Middle District of Florida.

The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 44 and 56, and to transfer the case to the U.S. District Court for the Middle District of Florida forthwith.

SO ORDERED.

Dated: April 26, 2017
New York, New York

_____
GREGORY H. WOODS
United States District Judge