Anthony H. Handal, Esq.
HANDAL & MOROFSKY LLC
83 East Avenue
Norwalk, CT 06851
Telephone  (917) 880-0811
handal@handalglobal.com

*Attorneys for Plaintiff*
*Multiwave Sensors, Inc.*

### IN  THE  UNITED  STATES  DISTRICT  COURT
### FOR THE MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

| | |
|---|---|
| MULTIWAVE SENSORS INC.,<br><br>Plaintiff,<br><br>v.<br><br>SUNSIGHT INSTRUMENTS, LLC,<br><br>Defendant. | **Case No: 6:17-cv-761-Orl-31DCI**<br><br>**PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF** |

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION..................................................................................................2

    A. Defendant's Old AAT Which It Claims Is Prior Art to the Invention Will Not Even Hold Good Strap Tension..................................................................................2

    B. Old AAT Performance Depended On Technician's Strength........................3

    C. The Industry Struggled With the Prior Art for Years.....................................3

    D. After Copying Invention and Being Caught, Red-Handed, Hiding and Lying About Evidence, and Threatening Counsel, Defendant Says It Cannot Understand Claims...3

II. FACTUAL BACKGROUND.............................................................................7

    A. Overview of the Patent....................................................................................7

    B. Sunsight's Copying of the Patented Invention................................................8

        1. Defendant Claimed New Tool Had Friction Grip of Old AAT Not Mechanical Tightener........................................................................................................8

        2. Accused Products Had Infringing Mechanical Tightener.................................9

        3. Defendant Has Abandoned Its Defense In Favor of "Claim Construction" Strategy.........................................................................................................9

III. LAW OF CLAIM CONSTRUCTION............................................................10

    A. The Claims of a Patent Define Its Scope......................................................10

    B. Claims Are Not to Be Rewritten Under the Guise of Claim Construction.................10

    C. Words of a Claim Are Given Their Ordinary and Customary Meaning.....................11

    D. The Specification and Prosecution Cannot Be Used to Limit the Ordinary Meaning of the Claims to a Specific Embodiment of an Invention............................................12

    E. Claims Are Not to Be Construed To Exclude a Preferred Embodiment.....................13

    F. The Legal Standard for "Indefiniteness" of Claim Language: Patents are Presumed Valid Against a Challenge of Indefiniteness.........................................................14

    G. Definiteness...................................................................................................15

IV. THE PROPER CONSTRUCTION OF THE CLAIM TERMS...........................16

    A. "Bracket Arm Being Conformable to One or More Walls Of The Antenna" – Claim 1a....................................................................................................................18

        1. "Conformable" Does Not Need to Be Construed Because It Has Its Plain and Customary Meaning.......................................................................................18

        2. To the Extent That the Court Believes It Necessary to Construe "Conformable," It Should Be Given Its Plain and Customary Definition.................................18

        3. Defendant Sunsight's First Step in Rewriting the Claim So That There Is No Infringement is to Rely upon a Definition of the Wrong Word........................19

        4. Defendant Sunsight's Proposed Construction Pulls Claim Limitations Out of Thin Air.......................................................................................................19

        5. Defendant Sunsight's Proposed Construction of "Conformable" Is Wrong As a Matter of Law................................................................................................19

        6. "Conformable" Is Not Indefinite..................................................................20

B. "Mounting Brace Substantially Perpendicular to The Bracket Arm" –Claim 1a........21

    1. "Substantially Perpendicular" Does Not Need to Be Construed Because It Has Its Plain and Customary Meaning................................................................21

    2. Defendant's Proposed Indefiniteness of "Substantially" Is Wrong as a Matter of Law................................................................................................22

C. "Adjustable Flexible Strap Conformable to One or More of the Front and Side Walls of the Antenna" – Claim 1b................................................................23

    1. Once Again Defendant Uses the Definition of the Wrong Word.....................23

    2. While Defendant Apparently Again Wishes to Characterize the Word Conformable As Meaning Flexible, It Ignores That the Word "Flexible" Actually Appears..............................................................................23

D. "Appropriate Tension In Relation to the Antenna" – Claim 1...................................24

    1. Defendant Contends "Appropriate Tension" Is Indefinite But a Technician Aligning a Tool Makes a Determination of Appropriate Tension on Every Job................................................................................................24

    2. Defendant's Contention Plaintiff Must Anticipate and Specifically Claim Characteristics of Every Antenna to Come along during 20 Year Patent Life Is Ludicrous.........................................................................................24

    3. Defendant Urges Indefiniteness Due to Not Specifying "Bounds of the Term 'Appropriate Tension.'................................................................................24

    4. Getting the Right Tension Has Never Been an Issue......................................26

E. "Arm Is At Least As Long As the Width of the Back Wall of the Antenna" – Claim 2..................................................................................................26

    1. Nothing Could Be Simpler Than Determining Whether One Part is Longer Than Another..............................................................................................26

F. "Bracket Conforms to the One Side Wall of the Antenna" – Claim 4......................27

    1. Applicant Is Not Required to Anticipate Characteristics of Future 20 Years of Antenna Development..............................................................................27

    2. Proposed Instruction Mangles Language by Definition of Different Word and Addition of Term "Flexible" from Nowhere....................................................27

    3. To the Extent That the Court May Construct the Term, Dictionary Definitions Should be Used............................................................................28

G. "Sufficiently Long Along the Back Wall of the Antenna to Maintain Alignment Accuracies" – Claim 15................................................................................28

    1. Persons of Ordinary Skills in the Art Can Measure Accuracy........................28

V. CONCLUSION..................................................................................................29

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGES(S)**

*Abbott Labs. v. Andrx Pharms., Inc.,*
473 F. 3d 1196 (Fed. Cir. 2007)..........................................................................................11

*All Dental Prodx, LLC v. Advantage Dental Prods., Inc.,*
309 F.3d 774, 779 (Fed. Cir. 2002).....................................................................................20

*Anchor Wall Sys. v. Rockwood Retaining Walls,*
340 F.3d 1298 (Fed. Cir. 2003)......................................................................................11, 14

*Bausch & Lomb Inc. v. Coopervision Inc.,*
2008 U.S. Dist. LEXIS 94813 (W.D.N.Y. Nov. 12, 2008)..................................................12

*Biotec Biologische Naturverpackungen GmbH v. Biocorp, Inc.,*
249 F.3d 1341 (Fed. Cir. 2001)..........................................................................................12

*Bristol-Myers Squibb Co. v. Rhone-Polenc Rorer, Inc.,*
2001 U.S. Dist. LEXIS 24583 (S.D.N.Y. June. 5, 2001)....................................................10

*Combined Tactical Sys. v. Def. Tech. Corp. of Am.,*
426 F. Supp. 2d 140 (S.D.N.Y. 2006).............................................................................11, 13

*Dow Chem. Co. v. Sumitomo Chem. Co.,*
257 F.3d 1364 (Fed. Cir. 2001).....................................................................................13, 19

*Doyle v. Crain Indus.,*
2000 U.S. App. LEXIS 26894 (Fed. Cir. 2000)..................................................................12

*Exxon Research & Eng'g Co. v. United States,*
265 F.3d 1371, 1377-79 (Fed. Cir. 2001)......................................................................15, 20

*Harris Corp. v. IXYS Corp.,*
114 F.3d 1149 (Fed. Cir. 1997)...........................................................................................12

*Hoechst Celanese Corp. v. BP Chems. Ltd.,*
78 F.3d 1575 (Fed. Cir. 1996)..............................................................................................13

*Kickstarter, Inc. v. Fan Funded, LLC,*
2013 U.S. Dist. LEXIS 8112 (S.D.N.Y. Jan. 18, 2013) .....................................................11

*Laboratoires Perouse, S.A.S. v. W.L. Gore & Assocs.,*
528 F. Supp. 2d 362 (S.D.N.Y. 2007) ................................................................................14

*Markman v. Westview*,
52 F.3d 967..................................................................................................................13

*Metabolite Laboratories, Inc. v. Lab. Corp. of Am. Holdings*,
370 F.3d 1354, 1365 (Fed. Cir. 2004)..........................................................................14

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*,
806 F.2d 1565, 1575, (Fed. Cir. 1986)..........................................................................14

*Pall Corp. v. Cuno Inc.*,
2001 U.S. Dist. LEXIS 16778 (E.D.N.Y. Sept. 7 2001)................................................10

*Patsy's Italian Rest., Inc. v. Banas*,
575 F. Supp. 2d 427, 443 n.18 (E.D.N.Y. 2008)
*aff'd*, 658 F.3d 254 (2d Cir. 2011)................................................................................22

*Phillips v. AWH.*,
415 F.3d 1303 (Fed. Cir. 2005)
*cert. denied* U.S. 1170 (2005) ...............................................................................passim

*Resonate Inc. v. Alteon Websystems, Inc.*,
338 F. 3d 1360 (Fed. Cir. 2003)...............................................................................6, 10

*Revlon, Inc. v. Carson Products Co.*,
602 F. Supp. 1071, 1098 (S.D.N.Y. 1985) aff'd, 803 F.2d 676 (Fed. Cir. 1986).........................15

*Rhine v. Casio, Inc.*,
183 F.3d 1342, 1345 (Fed. Cir. 1999)..........................................................................14

*Seattle Box Co. v. Indus. Crating & Packing*,
731 F. 2d 818, (Fed. Cir. 1984)........................................................................15, 22, 25

*Silicon Graphics, Inc. v. ATI Techs.*,
607 F.3d 784 (Fed. Cir. 2010)......................................................................................11

*SRAM Corp. v. AD-II Eng'g, Inc.*,
465 F.3d 1351 (Fed. Cir. 2006)....................................................................................10

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
775 F.2d 1107, 1118 (Fed. Cir. 1985)......................................................................20, 23

*Star Scientific, Inc. v. RJ Reynolds Tobacco Co.*,
655 F.3d 1364, 1373 (Fed. Cir. 2011)..........................................................................15

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
537 F.3d 1357, 1371 (Fed. Cir. 2008)..........................................................................15

*Standard Oil Co. v. Montedison*,
664 F.2d 356, 363-64 (3d Cir.1981).................................................................................14, 15

*Sun Coast Merch. Corp. v. CCL Prods. Enters.*,
179 Fed. App'x. 6 (Fed. Cir. 2006) ...........................................................................14

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
299 F.3d 1313 (Fed. Cir. 2002)................................................................................13

*U.S. Surgical Corp.* v. *Ethicon, Inc.*,
103 F.3d 1554 (Fed. Cir. 1997)................................................................................12

*United States v. Bari*,
599 F.3d 176, 180 (2d Cir. 2010)..............................................................................22

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996)............................................................................10, 13

*Vox Amplification, Ltd. v. Meussdorffer*,
No. 13-cv-4922, 2014 U.S. Dist. LEXIS 21577, *21-*22 (E.D.N.Y. Feb. 11, 2014)...................22

*W.L. Gore & Associates, Inc. v. Garlock, Inc.*,
721 F.2d 1540, 1557, 220 USPQ 303, 316 (Fed.Cir.1983)..............................................14, 16, 25

**STATUTES AND OTHER AUTHORITIES**

35 U.S.C. § 112............................................................................................................14, 25

35 U.S.C. § 282............................................................................................................14

Merriam-Webster Webster's Third New International Dictionary........................................18, 28

Multiwave Sensors, Inc. ("Multiwave") brought this action against Sunsight Instruments, LLC ("Sunsight" or "Defendant") for patent infringement, after Defendant Sunsight added a tightening mechanism to Defendant's old antenna alignment tool ("AAT"), thus giving it a feature previously found only on Plaintiff Multiwave's patented SmartAligner™ AAT. By making that change to its product, Defendant, willfully infringed Multiwave's U.S. Patent No. 8,436,779 ("the Patent"). Exhibit A.  Defendant continues to infringe the Patent by selling its newly modified and infringing AAT, while, at the same time, continuing to sell its old non-infringing AAT.

Generally, Defendant seeks to rewrite and thus evade the fair and apparent scope of the claims byA) changing the word "conformable" to mean flexible without any valid support, relying instead on the definition of a word not in Claim 1, and the arbitrary addition of the word "flexible" which conflicts with the teaching of the Patent.  It then urges that that B) "substantially perpendicular" and C) the adjustable flexible conformable strap are indefinite, despite the clear meaning of those terms. Finally, Defendant presents a shotgun contention that claim terms that speak to the relationship of AAT parts to the antenna being aligned, namely D) "Appropriate tension," E) "at least as long as," F) "conforms" and G) "sufficiently long" are indefinite for failing to specify the dimension of the antenna, something completely illogical, given the fact that the patent ed tool will be used on many future designs during its 20 year lifespan.

Pursuant to the Court's Order dated April 13, 2017 [Dkt. No. 61-1], Multiwave hereby submits its opening claim construction memorandum.

1

**I. INTRODUCTION**

Cellular telephone system antennas are mounted on towers, usually high in the air so they can reach consumer smartphones a considerable distance from the antenna. A tower supports several antennas, each of which serves consumers in the different angular sectors surrounding the tower. The mounting supporting the antenna on the tower is adjustable, allowing the angular orientation of the antenna to be rotated in all directions. When the antenna has been put into the correct position during the alignment procedure, the mounting may be locked, keeping the antenna in the desired position, that is aimed in the right direction in alignment with the other antennas on the tower.

Antenna alignment tools enable accurate aiming of cellular telephone system antennas during the alignment procedure. Once the antennas on the tower are aligned, the antennas, acting together, can precisely and without gaps serve the cellphone coverage area surrounding the tower.

Multiwave, though substantially smaller than Defendant, is the quality leader in the AAT market. It is the developer of its SmartAligner™ antenna alignment tool. The aspirations of Multiwave's founders, Bruce Clifford and Mark Frischman, are pinned to the superior precision of the SmartAligner™ AAT. This precision is enabled by the capability of the SmartAligner AAT to be 1) securely and tightly attached to the antenna 2) and level with the antenna back wall during alignment.  If the attachment is not tight, an AAT will wobble on the antenna and give a number of different readings, resulting in poor accuracy for the tool. If an AAT is not level it will not give an accurate reading.

A. Defendant's Old AAT Which It Claims Is Prior Art to the Invention Will Not Even Hold Good Strap Tension.

2

Defendant's old AAT used a hand tightening system, involving hand pulling a strap wrapped around the outside of the antenna housing to secure it to the AAT. Once tightened, the position was supposed to be held by a friction buckle, which was much like a sheet metal military belt buckle. But there was a problem, the friction buckle loosened as soon as the technician tightening the strap released the strap. To address this problem, Defendant made a portion of the strap from an elastic rubber band, the theory being that the strap could be stretched to overtighten the strap by stretching the rubber band, and that a loss in tension upon manual release of the strap would nevertheless leave the strap tight enough to provide a functional result. However, Defendant's elastic strap portion approach suffered because the elastic portion did allow some wobble because, after all, it is elastic.

B. Old AAT Performance Depended On Technician's Strength

And the design had another problem. While it did give usable readings in most cases, if the technician was not strong enough, or if he was having a physical problem like arm pain, or if he just was not concentrating on the task, there was a likelihood that not enough force would be applied by the hand-pulling of the technician.

C. The Industry Struggled With the Prior Art for Years

Notwithstanding these problems, for years technicians used the old AAT's, suffering physical strain, inconvenience, sometimes pain, less than ideal alignments and sometimes poor alignments requiring follow-up correction. Now that Clifford and Frischman have made their invention, Defendants rush to copy the patented system and deny the inventors the fruits of their labors.

D. After Copying Invention and Being Caught, Red-Handed, Hiding and Lying about Evidence, and Threatening Counsel, Defendant Says It Cannot Understand Claims.

3

After Defendant copied the invention, it brazenly stated that the infringing device is "structurally and functionally" the same as their old AAT. Exhibit B. After such mischaracterization of the evidence, then hit that evidence and threatened counsel with Rule 11 sanctions, hoping to avoid being called on his misrepresentations. However, after being cornered and forced to produce the evidence, which showed that its defense was totally without merit, Defendant now claims it cannot understand the claims and seeks to have them rewritten to cover something not in the Patent, something indeed that cannot even work.

Defendant seeks here to avoid paying royalties, wandering from one alleged offense to another, saying 1) they made no change to the function or structure of the product, 2) that what they did not do for years was obvious, and, in this application, 3) that they do not understand the patent claims, or at least 4) that the patent claims must mean something other than what they plainly say. To this end they propose that the claims define a structure that is not even disclosed in the Patent (or even makes any sense at all), that the bracket is flexible, like the strap that binds the AAT to the bracket.  Indeed, besides not functioning, and not being disclosed in the Patent, this goes against the explicit teaching of the Patent, which states that different shaped antennas require different brackets which conform to the particular shape of the antenna.

The other prior art AAT mentioned in the Patent relied upon a C-clamp to attach the AAT to the antenna. The two gripping surfaces of the C-clamp engaged the front and back surfaces of the housing which contains the active elements of the antenna. Even though the prior art C-clamp AAT *could* be secured tightly to the antenna, when the C-clamp was tightened it might align the AAT with the front *or* back of the antenna, and this was not in the control of the technician aligning the antenna.  This was a problem because the operative antenna elements should be aligned to the *back* of the antenna.

4

While the prior art old AAT elastic strap and C-clamp systems do work, Clifford and Frishman found a way to improve upon both of them. The Multiwave inventors did this by adding a mechanical tightening mechanism, instead of a buckle, allowing Multiwave, in its new patented design, to do away with the elastic strap portion that is at the center of Defendant's marginal accuracy problem.

Multiwave has invested substantial time, money and resources in the research and development of its innovative SmartAligner™ technology. In acknowledgment of Multiwave's novel and useful innovations and contributions in the field of cellular telephone system antenna alignment, the United States Patent and Trademark Office ("USPTO") has granted Multiwave the Patent. The Patent is directed to novel technology that overcomes the problems and disadvantages associated with prior AAT's, including wobble and alignment to the wrong part of the antenna.

This litigation involves Sunsight's copying of Multiwave's SmartAligner™ technology and its willful infringement of the Patent. Having reaped the benefits of Multiwave's innovative cleverness, and its R&D investments and expertise in the field, Sunsight now seeks to rewrite the plain and ordinary language of the asserted claims of the Patent to improperly narrow them. By rewriting the claims in this way, Sunsight hopes to escape infringement of the very technology these claims were designed to protect. Directly contrary to controlling authority, Sunsight's proposed claim constructions attempt to fashion limitations from whole cloth, limitations which, and most remarkably so, *are not even present in the examples of the Patent*, in an attempt to whittle away at the scope of the claims to avoid infringement.

Every word of the claims of an issued U.S. patent is carefully chosen to accurately reflect the full scope of the invention. A single word change to the claim language can dramatically

5

alter the nature and scope of the patent from what the patentee filed and what the USPTO reviewed and approved. Indeed, a single word change can turn a determination of infringement or non-infringement on its head. It is therefore important that the language of the claims not be rewritten under the guise of claim construction. Indeed, the Federal Circuit has repeatedly stated that "[c]ourts do not rewrite claims." *Resonate Inc. v. Alteon Websystems, Inc.*, 338 F. 3d 1360, 1365 (Fed. Cir. 2003) (citations omitted).

As set forth in Multiwave's Preliminary Infringement Contentions, infringement in this case is clear. Yet, in an apparent effort to prolong this litigation so that it can continue flooding the market with infringing products, Sunsight has identified seven claim terms that it contends are either in "dispute" and need construction, or are so indefinite that they cannot be said to be understood to have *any* meaning at all.

The "disputed" claim terms at issue need no construction at all as they are readily understandable to a person of ordinary skill in the art (which is the legal test), and even to a layperson. The Court should, therefore, accord the claim terms their ordinary and customary meaning, and reject Sunsight's attempts to rewrite the claims via overly narrow, erroneous constructions in its efforts to escape a finding of infringement. To the extent that the Court believes that it may be necessary to construe one or more of these "disputed" terms, however, Multiwave has proposed constructions that remain true to the original scope of the claim.

## II. FACTUAL BACKGROUND

### A. Overview of the Patent.[1]

Multiwave is the owner of the Patent entitled "Apparatus for Aligning an Antenna in a Reference Position." The application that matured into the Patent was filed on March 18, 2011. After thorough examination, the USPTO issued the Patent on May 7, 2013.

As shown in Figure 1, below (taken from the Patent and supplemented with textual descriptors), in one embodiment of the inventive AAT, those elements include a) a bracket (comprising a bracket arm and a mounting brace substantially perpendicular to the bracket arm), b) a securing arrangement (comprising a flexible strap for holding the antenna to the bracket and a tightening mechanism to tighten the strap with enough tension to securely hold the AAT to the antenna), and c) an alignment device attached to the mounting brace. The bracket arm must be long enough to hold the antenna securely.



Figure 1

---

1 When citing to a specific section of the Patent, reference is made to the column number of the Patent, followed by a colon, followed by the line number(s) of the specified column. For example, 1:16-17 is a reference to column 1, lines 16 to 17 of the Patent.

7

The Patent discloses a number of different embodiments of the inventive AAT having different configurations. To be sure that anyone reading the Patent understands its scope, the Patent also explicitly states "[i]t will be appreciated by those skilled in the art that other variations of the embodiments described herein may also be practiced without departing from the scope of the invention" (*Id.* 10:29-31.)

**B. Sunsight's Copying of the Patented Invention.**

In 2015, Multiwave became aware that Defendant had begun advertising and offering for sale in the United States an AAT which copied the design of the Multiwave SmartAligner, misappropriating the inventions of the Patent. On February 22, 2016, Multiwave filed the original complaint in this action.

On March 18, 2016, Defendant protested saying that the Patent was invalid, because, allegedly, "the prior art Sunsight tool and the accused Sunsight tool [were] structurally and functionally the same" because each tool included "a bracket, a securing means including a flexible strap and tightening mechanism." During a follow-up conversation the undersigned was threatened under Rule 11.

Multiwave's counsel, concerned that he might be misinterpreting photographic evidence (to which he was limited because cell tower alignment tools cannot be easily purchased on the market), then (and repeatedly) tried to obtain a physical sample of the infringing tool from Defendant's counsel to evaluate the Defendant's accusation of impropriety.

1. Defendant Claimed New Tool Had Friction Grip of Old AAT Not Mechanical Tightener.

Defendant claimed that "the same securing means and tightening mechanisms in the admitted prior art AAT is the same (sic) as used in the current AAT" (Ex. B), the undersigned

8

sought evidence of Defendant's position, requesting variously, on at least five occasions over a period of about three weeks and without success, more complete drawings, better photography and/or a sample of the new strap mechanism.

2. Accused Products Had Infringing Mechanical Tightener

Finally, after numerous refusals and/or furnishing non-responsive documents, Sunsight relented and produced the new strap mechanism. It *had* the denied mechanical tightener, and nothing remotely even like a friction buckle. Multiwave's diligent and good-faith response to Defendant's threat of Rule 11 sanctions was a wasteful exercise triggered by a deceptive bluff.

The undersigned's findings were communicated to Defendant's counsel on May 3, 2016. After a week of silence, on May 10, 2016, Defendant lamely responded stating that there was no infringement of the '779 Patent and, remarkably, again threatened Plaintiff's counsel with Rule 11 sanctions unless the action was dismissed, serving a formal notice of motion for sanctions pursuant to Rule 11 on counsel.

3. Defendant Has Abandoned Its Defense in Favor of a "Claim Construction" Strategy

Conspicuously absent from the supposed "disputed" claim terms proffered by Defendant is any reference to claim terms relating to the claimed and copied mechanical tightener, or any attempt to have such language construed as the equivalent of a friction buckle. At this point, Defendant has given up on its invalidity based on the old AAT "prior art" defense. However, its present attempt to have the claims 1) interpreted to mean structures not even disclosed in the Patent or 2) found so indefinite as to be totally incapable of understanding is equally frivolous.

### III. LAW OF CLAIM CONSTRUCTION.

#### A. The Claims of a Patent Define Its Scope.

In *Phillips v. AWH Corp.*, the Federal Circuit elaborated the principles that govern claim construction. 415 F.3d 1303 (Fed. Cir. 2005) (en banc), *cert. denied*, 546 U.S. 1170 (2005). The *en banc* Federal Circuit confirmed that "[i]t is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." 415 F.3d at 1312 (internal citations omitted); *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("we look to the words of the claims themselves … to define the scope of the patented invention"). "Because the patentee is required to define precisely what his invention is, the Court explained, it is unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms." *Phillips,* 415 F.3d at 1312 (citations omitted).

#### B. Claims Are Not to Be Rewritten under the Guise of Claim Construction.

The Federal Circuit has repeatedly warned that courts are not permitted to rewrite the claim language. *SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1359 (Fed. Cir. 2006) ("we are powerless to rewrite the claims and must construe the language of the claim at issue based on the words used"); *Resonate*, 338 F. 3d at 1365 (holding that "Courts do not rewrite claims"). Courts in this District have echoed the Federal Circuit's warning. (Baron Services, Incorporated v. Weathercall Services, LLC, (ND Ala, 2014). Also, *See Bristol-Myers Squibb Co. v. Rhone-Polenc Rorer, Inc.*, 2001 U.S. Dist. LEXIS 24583, at *27 (S.D.N.Y. June. 5, 2001) ("This requested change in the straight forward claim language […] to language which specifically narrows and restricts the term […] has no basis in Federal Circuit law."); *Pall Corp. v. Cuno*

10

*Inc.*, 2001 U.S. Dist. LEXIS 16778, at *24 (E.D.N.Y. Sept. 7 2001) ("courts do not rework claims. They only interpret them.").

### C. Words of a Claim Are Given Their Ordinary and Customary Meaning.

Under *Phillips* "the words of a claim are generally given their ordinary and customary meaning," that is, "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312-13; *see also Silicon Graphics, Inc. v. ATI Techs.*, 607 F.3d 784, 789 (Fed. Cir. 2010) ("The rules of claim construction are well known. For instance, the terms of a claim are generally given their ordinary and customary meaning.") (internal quotations omitted); *Abbott Labs. v. Andrx Pharms., Inc.,* 473 F. 3d 1196, 1209-11 (Fed. Cir. 2007) (*quoting Phillips* and concluding that the district court erred in limiting the claim term contrary to its ordinary meaning); *Anchor Wall Sys. v. Rockwood Retaining Walls,* 340 F.3d 1298 (Fed. Cir. 2003) (holding that the district court erred in deviating from the ordinary meaning of the claim terms); *Combined Tactical Sys. v. Def. Tech. Corp. of Am.*, 426 F. Supp. 2d 140 (S.D.N.Y. 2006) (*quoting Phillips* and rejecting constructions which contradict or do not comport with "the ordinary meaning" of the claim terms to be construed, and adopting constructions that are "consistent with" or "reflect" the "ordinary meaning of the claim language"); *Kickstarter, Inc. v. Fan Funded, LLC,* 2013 U.S. Dist. LEXIS 8112, at *8, *15 (S.D.N.Y. Jan. 18, 2013) (*quoting Phillips* and declining to construe claim term where "the ordinary meaning of this claim term applies and is self-explanatory to a person of ordinary skill in the art.").

A person of ordinary skill in the art is deemed to read the claim term in light of the entire patent, including the other claims. Indeed, "[d]ifferences among claims can also be a useful guide in understanding the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314-15.

11

Where a claim of a patent has an express limitation but another claim of the patent does not, it is improper to import the express limitation into the claim that does not have that express limitation. *Doyle v. Crain Indus.*, 2000 U.S. App. LEXIS 26894, at \*14-\*15 (Fed. Cir. 2000) ("where some claims are broad and others narrow, the narrow claim limitations cannot be read into the broad whether to avoid invalidity or to escape infringement."); *Bausch & Lomb Inc. v. Coopervision Inc.*, 2008 U.S. Dist. LEXIS 94813, at \*27 (W.D.N.Y. Nov. 12, 2008) ("there is presumed to be a difference in meaning and scope when different words or phrases are used in different claims").

As the Federal Circuit has explained, proposed constructions that obscure or unnecessarily complicate the plain meaning of claim terms frustrate this goal. *U.S. Surgical Corp.* v. *Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997); *Biotec Biologische Naturverpackungen GmbH* v. *Biocorp, Inc.*, 249 F.3d 1341, 1349 (Fed. Cir. 2001) ("the meaning of 'melting' does not appear to have required 'construction,' or to depart from its ordinary meaning"). This is particularly the case when construction "would contribute nothing but meaningless verbiage to the definition of the claimed invention." *Harris Corp.* v. *IXYS Corp.*, 114 F.3d 1149, 1152 (Fed. Cir. 1997).

### D. The Specification and Prosecution Cannot Be Used To Limit the Ordinary Meaning of the Claims to a Specific Embodiment of an Invention.

While the claims are interpreted in view of the patent specification,[2] caution must be used so a court does not unduly narrow claim terms:

> [A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments . . . That is not just because section 112 of the Patent Act requires that the claims

---

[2] 6 The specification of the patent contains a description and examples of the invention of the patent. However, it is the claims of the patent, that define the scope of the invention. *Phillips*, 415 F.3d at 1312.

12

themselves set forth the limits of the patent grant, but also because persons of ordinary skill in the art rarely would confine their definitions of terms to the exact representations depicted in the embodiments. *Phillips*, 415 F.3d at 1323 (internal citations omitted).

Furthermore, an accused infringer cannot overcome the "heavy presumption" that a claim term takes on its ordinary meaning simply by pointing to the preferred embodiment or other structures or steps disclosed in the specification or prosecution history. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002); *Markman v. Westview*, 52 F.3d 967, at 980 ("The written description part of the specification itself does not delimit the right to exclude. That is the function and purpose of claims.").

In addition, although the prosecution history may be informative, "because [it] represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317.

**E. Claims Are Not To Be Construed To Exclude A Preferred Embodiment.**

While the claims should not be limited to embodiments in the specification, "it is also well established that a claim construction that excludes a preferred embodiment is rarely, if ever, correct." *Dow Chem. Co. v. Sumitomo Chem. Co.*, 257 F.3d 1364, 1378 (Fed. Cir. 2001) (internal quotations, citations, and emphasis omitted); *Vitronics Corp.*, 90 F.3d at 1583; *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1581 (Fed. Cir. 1996) ("it is unlikely that an inventor would define the invention in a way that excluded the preferred embodiment, or that persons of skill in this field would read the specification in such a way" and rejecting construction of a claim term that would exclude the patentee's preferred embodiment); *Combined Tactical Sys.*, 426 F. Supp. 2d at 145 (rejecting defendants' claim construction where it would exclude from the claim the preferred embodiment of the invention described in the

13

patent specification); *Sun Coast Merch. Corp. v. CCL Prods. Enters.*, 179 Fed. App'x. 6 at 13 (Fed. Cir. 2006) (noting that a patent term should not be limited "in a way that would exclude the preferred embodiment" and, to the extent the district court applied such a limited construction, holding that application erroneous); *Anchor Wall Sys.*, 340 F.3d at 1308 (reversing district court's construction of a claim term where it excluded a preferred embodiment disclosed in the patent); *Laboratoires Perouse, S.A.S. v. W.L. Gore & Assocs.*, 528 F. Supp. 2d 362, 389 (S.D.N.Y. 2007) (rejecting defendant's proposed claim construction where it would exclude an embodiment described in the patent).

**F. The Legal Standard for "Indefiniteness" of Claim Language: Patents are Presumed Valid Against a Challenge of Indefiniteness**

 "A patent issued from the United States Patent and Trademark Office bears the presumption of validity under 35 U.S.C. § 282. An accused infringer, therefore, must prove patent invalidity under the clear and convincing evidentiary standard." *Metabolite Laboratories, Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004).  This presumption of validity and the requirement to establish facts showing invalidity by clear and convincing evidence applies to challenges contending that the claims are indefinite. *See Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1575, (Fed.Cir.1986).  If possible claims should be construed to sustain their validity.  *See Rhine v. Casio, Inc.,* 183 F.3d 1342, 1345 (Fed. Cir. 1999).

The language of a patent is definite if "the specification conclude[s] with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112(2).  Full disclosure of the scope and limits of an invention is required so that one with ordinary skill in the art could replicate it.  *See Standard*

14

*Oil Co. v. Montedison*, 664 F.2d 356, 363-64 (3d Cir.1981).  "If one with ordinary skill in the art could make and use the invention by following the specifications, the patent will not be invalidated by reason of indefiniteness."  *Revlon, Inc. v. Carson Products Co*., 602 F. Supp. 1071, 1098 (S.D.N.Y. 1985) aff'd, 803 F.2d 676 (Fed. Cir. 1986).

Construction Should be Definite or Claim is Invalid

Notwithstanding, if one were to accept the non-sensical claim rewrite proposed by Defendant, the same would be insolubly ambiguous. The claims would then have to be found not to serve the function of putting the public on notice as toward what and what does not infringe. Even "a construed claim can be indefinite if the construction remains insolubly ambiguous...." *Star Scientific, Inc. v. RJ Reynolds Tobacco Co*., 655 F.3d at 1373; see also *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1377-79 (Fed.Cir. 2001). "[I]f reasonable efforts at claim construction result in a definition that does not provide sufficient particularity and clarity to inform skilled artisans of the bounds of the claim, the claim is insolubly ambiguous and invalid for indefiniteness." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co*., 537 F.3d 1357, 1371 (Fed.Cir.2008). Accordingly, construction should look to the patent specification, rather than accepting extrinsic suggestions, in this case using the definition of the verb "conform" to define the adjective "conformable" and then without basis adding the word flexible.

**G. Definiteness**

"Definiteness problems often arise when words of degree are used in a claim. That some claim language may not be precise, however, does not automatically render a claim invalid. When a word of degree is used the district court must determine whether the ***patent's specification*** provides some standard for measuring that degree." [Emphasis added] *Seattle Box*

15

*Co. v. Indus. Crating & Packing*, 731 F. 2d 818, (Fed. Cir. 1984) ("When a word of degree is used the district court must determine whether the patent's specification provides some standard for measuring that degree. The trial court must decide, that is, whether one of ordinary skill in the art would understand what is claimed when the claim is read in light of the specification.

> The trial court found here that an expert would know the limitations of the claims. The specification clearly sets forth, for example, that the divider blocks are intended to absorb the weight of overhead loads. Furthermore, even if Industrial needed to experiment so as to determine the limits of the '373 patent's claims, the claims would not be invalid under section 112. See, e.g., *W.L. Gore & Associates, Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1557, 220 USPQ 303, 316 (Fed.Cir.1983).").

## IV. THE PROPER CONSTRUCTION OF THE CLAIM TERMS.

Multiwave presents below its position on the proper construction of the seven claim terms as to which Sunsight is attempting to create disputes.

Claim 1, the only independent claim in the application, reads as follows:

> 1. An apparatus for removeably retaining an antenna in a reference position that is in reference to a back wall of the antenna during alignment of the antenna, said apparatus comprising:
> a) a bracket incorporating a bracket arm being conformable to one or more walls of the antenna, including at least the back wall of the antenna, and a mounting brace substantially perpendicular to the bracket arm;
> b) a securing means attached to the bracket, said securing means being operable to retain the antenna in the reference position and including an adjustable flexible strap conformable to one or more of the front and side walls of the antenna, and a tightening mechanism operable to tighten and release the flexible strap to an appropriate tension in relation to the antenna; and
> c) an alignment device attached to the mounting brace, said alignment device being moveable to a variety of positions, and said alignment device being operable to align the antenna and to determine the alignment of the antenna with reference to the back wall of the antenna.

Patent lawyers often use claim diagrams to help visualize the words of a patent. The content of a claim diagram is properly limited to the structural details included in the claim. The result can function as a helpful graphical representation of the subject matter covered by the claim. A diagram of claim 1 of the Patent appears below in Figure 2.

16



Figure 2 –Diagram of Claim 1

As has been visualized by Figure 2, Claim 1 is generally directed to an innovative AAT which comprises a bracket formed by a bracket arm and bracket mounting brace. The antenna fits into the bracket and is held there by the strap. The strap is tightened by the tightening mechanism (not by hand-pulling as in Defendant's old AAT, which Defendant continues to sell). The position of the bracket and the antenna attached to it is measured by the alignment device which functions much like an extremely accurate GPS. The alignment device is moveable, as is indicated by the two-headed arrow in Figure 2, above.

As the antenna orientation is adjusted on the mounting which attaches it to the tower, the alignment device provides a reading of the antenna orientation, in other words where the antenna is aimed. When the antenna is put in the correct orientation, the mounting may be tightened and the antenna kept in that position, thus ensuring good cell phone coverage for smartphones in various directions connected to the various antennas on the tower.

The parts of the claims at issue on construction have been parsed into a plurality of claim elements in Exhibit C, with the disputed claim terms highlighted. In addition, Exhibit C contains a series of large format claim diagram drawings. Each drawing is associated with a claim element and appears adjacent to the claim element in the claim text. Each drawing has been

17

annotated to highlight its associated element, to facilitate the reading of the text of the claim in Exhibit C.

### A. "BRACKET ARM BEING CONFORMABLE TO ONE OR MORE WALLS OF THE ANTENNA" -- CLAIM 1a.

1. "Conformable" Does Not Need to Be Construed Because It Has Its Plain and Customary Meaning.

It appears that the crux of the position taken by Defendant relates to the meaning of "conformable," as judged by Defendant's position, which appears in Exhibit D (which illustrates in chart form 1) the claim language, 2) the claim diagram, 3) the position of the Plaintiff and 4) the proposed construction of the Defendant, as detailed by Defendant in its court-ordered report of disputed terms and proposed definitions.

The position of Plaintiff is that the term "conformable" is a perfectly ordinary English word with a well-understood meaning and is not in need of construction by this Court. The term is understandable to both persons of ordinary skill in the art and to ordinary laypersons. More particularly, the Merriam-Webster online dictionary defines "conformable" as meaning "corresponding or consistent in form or character." Exhibit E.

2. To the Extent That the Court Believes It Necessary to Construe "Conformable," It Should Be Given Its Plain and Customary Definition.

Certainly, the bracket arm is "consistent in form" with the antenna, fitting against the antenna with essentially the same shape as the back and side walls of the antenna that bear against the bracket. This allows the antenna to snugly fit in place on the bracket. Thus, no construction is needed. If the court believes that instruction is needed, the claim language at issue

should be construed as meaning "bracket arm being ***consistent in form with*** one or more walls of the antenna."

3. Defendant Sunsight's First Step in Rewriting the Claim So That There Is No Infringement is to Rely upon a Definition of the Wrong Word.

Defendant's construction is made of whole cloth. It uses a dictionary definition for the wrong word, namely "conform" which is a verb, instead of the definition for the word in the claim, which is the adjective "conformable." Exhibit H.

4. Defendant Sunsight's Proposed Construction Pulls Claim Limitations Out of Thin Air.

If that isn't enough, having handily changed the word in the claim, Defendant then pulls the word "flexible" out of thin air and adds it to the dictionary definition of the wrong word ("so as to give the same shape, outline, or contour," (which has nothing to do with flexibility)), and comes up with the construction: "bracket arm ***being flexible*** so as to give the same shape, outline, or contour as one or more walls of the antenna." [Emphasis added]

5. Defendant Sunsight's Proposed Construction of "Conformable" Is Wrong As a Matter of Law.

"[A] claim construction that excludes a preferred embodiment is rarely, if ever, correct." *Dow Chem.* The specification makes it clear that the bracket is rigid, and that if antennas having different shapes are used, alternative embodiments where the bracket must be shaped differently for different shaped antennas must be employed, clearly because it is rigid and cannot be made to flexibly conform to different shapes. See the Patent which recites:

> "The apparatus may include a bracket adapted to conform to the back wall of the antenna. The back wall of the antenna may be flat, in which case the bracket may be adapted to conform to the flat back wall. In embodiments of the present invention adaptable to antenna that do not have a flat back wall, and the back wall of the antenna is a different shape, for example, such as a curved shape, the present invention may include an arm or bracket that conforms to the curved shape of the antenna." Patent, 5:23-31.

19

"A claim is construed in the light of the claim language [and] the other claims…" *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985). The word "flexible" appears in other unrelated parts of the claim. If applicant wanted to recite that concept, he would have used that word. Likewise, if the examiner believed that the word was required he would have rejected the claim. Moreover, the proposed limitation is completely nonsensical and would result in a nonfunctional device. It would be impossible for a flexible bracket and a flexible strap together to hold the AAT in a fixed position with respect to the antenna, because there is no rigid structure maintaining position.

In addition to this, the specification of the Patent makes it clear that the bracket is not flexible, insofar as all views of the apparatus shown have the same shape. In addition, brackets are normally made of rigid metal material, as is apparent to anyone who ever looked for a bracket in the local hardware store.

6. "Conformable" Is Not Indefinite.

Defendant's claim of indefiniteness is completely unsupported by the law, given that the meaning is well-defined in ordinary English parlance and consistent with the specification. As can be seen from the above, the meaning of the term is clear and Defendant has not come anywhere near meeting the high burden required to establish indefiniteness. See, *All Dental Prodx, LLC v. Advantage Dental Prods., Inc.*, 309 F.3d 774, 779 (Fed. Cir. 2002) ("If a claim is amenable to construction, 'even though the task [of claim construction] may be formidable and the conclusion may be one over which reasonable persons will disagree,' the claim is not indefinite." (quoting Exxon Res. & Eng'g Co. v. United States, 265 F.3d 1371,1375 (Fed. Cir. 2001))).

Defendant urges that the phrase is indefinite for failing to specify the characteristics of a

particular antenna. This is just plain nonsensical. Obviously, a patentee is not required to specify

the characteristics of every antenna which might be made in the future during the 20 year term of

a patent. In any case, if Defendant is referring to the shape of an antenna matching the shape of

the bracket, it is clear that the claim is definite insofar as it states that the two must conform to

each other. As a matter of common sense, no one is going to purchase an AAT with a bracket

that doesn't fit the antenna, and the sale of AAT's thus clearly constitute infringement.

In any case, the Defendant confuses the question of infringement with the question of

indefiniteness. The claim specifies that the bracket conforms to the antenna. If the sale occurs to

a user who has an antenna which does not conform to the bracket, then the issue is whether or

not there is infringement. Accordingly, there is clearly no basis for any finding of indefiniteness.

If there is a question of infringement, Defendant has the opportunity to raise that defense at trial,

and a finding of definiteness cannot prejudice that defense, in the unlikely event that it can be

argued.

The word "conformable" is definite and understandable, and should not be rewritten.

**B. "MOUNTING BRACE SUBSTANTIALLY PERPENDICULAR TO THE**

**BRACKET ARM" -- CLAIM 1a).**

1. "Substantially Perpendicular" Does Not Need to Be Construed Because It Has Its Plain

and Customary Meaning.

The suggestion that this term can be the subject of reasonable disagreement shows just

how far Defendant is willing to go to create a dispute where there fairly should be no

disagreement. Everyone knows what "perpendicular" means. "Substantially" is equally well-

defined. All this does is to define a common ordinary everyday bracket. Everyone knows what a

bracket looks like, and everyone knows brackets comprise two perpendicular members. That is what is shown in the Patent. See Figure 1. Likewise, mental brackets having a structure identical to that disclosed in the Patent are commonly available. See Exhibit F.

Moreover, antennas with back walls substantially perpendicular to their side walls are common on the market, and will conform to a bracket with a substantially perpendicular bracket arm and mounting brace (Figure 1). For examples of such antennas, see, for example, Figures 3 and 5 of the Patent. All one need do is put the query "cell phone antennas on towers" into Google and many dozens of similar antennas will be shown. Exhibit G. Courts may take judicial notice of information on the Internet.[3] It is clear that the "mounting brace substantially perpendicular to the bracket arm" refers to a bracket which fits such antennas with a back wall substantially perpendicular to a side wall. Defendant attempts at rewriting the patent description, drawings and claims are properly rejected and the jury should be allowed to consider the claim language approved by the patent examiner, as constituting well understood and commonly used terms.

2. Defendant's Proposed Indefiniteness of "Substantially" Is Wrong As a Matter of Law.

Use of the word of degree, such as "substantially" does not render a claim indefinite. A person of ordinary skill in the art would easily understand that the bracket is one meant to conform to the numerous antennas on the market which have a side wall substantially perpendicular to a back wall, as illustrated in the Patent. See also Exhibit G. *See, Seattle Box Co.*

---

[3] *See, e.g., Vox Amplification, Ltd. v. Meussdorffer*, No. 13-cv-4922, 2014 U.S. Dist. LEXIS 21577, *21-*22 (E.D.N.Y. Feb. 11, 2014) (Brown, M.J.) (in trademark action, taking judicial notice based on Internet searches that "a teardrop-shaped body on a stringed instrument could not imaginably be deemed distinctive"); *see also, e.g., United States v. Bari*, 599 F.3d 176, 180 (2d Cir. 2010) (affirming judicial notice of Internet materials and explaining that "a judge need only take a few moments to confirm his intuition by conducting a basic Internet search"); *Patsy's Italian Rest., Inc. v. Banas*, 575 F. Supp. 2d 427, 443 n.18 (E.D.N.Y. 2008) ("It is generally proper to take judicial notice of articles and Web sites published on the Internet."), *aff'd*, 658 F.3d 254 (2d Cir. 2011).

*v. Indus. Crating & Packing*, 731 F. 2d 818 ("substantially equal to" found not indefinite).

Accordingly, the phrase "substantially perpendicular to" is not properly found to be indefinite.

Respecting the plane of perpendicularly, all the brackets in Exhibit F look about the same

and also look the same as the bracket illustrated in the Patent (Figure 1). Accordingly, there is

clearly no indefiniteness issue.

This Court is respectfully urge to reject Defendant's claim that the phrase "substantially

perpendicular to" is indefinite.

### C. "ADJUSTABLE FLEXIBLE STRAP CONFORMABLE TO ONE OR MORE OF THE FRONT AND SIDE WALLS OF THE ANTENNA -- CLAIM 1b

1. Once Again Defendant Uses the Definition of the Wrong Word.

As noted above, the Defendant cannot rely upon the definition of the verb "conform" in

order to rewrite the meaning of the adjective "conformable."

2. While Defendant Apparently Again Wishes to Characterize the Word Conformable As

Meaning Flexible, It Ignores That Word "Flexible" Actually Appears in Other Parts of Claim.

Given the inclusion of the word "flexible" in the specification and in the claim, it is clear

that the strap is flexible. It is also adjustable. However, this does not change the meaning of the

word "conformable." To the contrary the fact that other parts of the claim use the word

"flexible," from a commonsense standpoint, establishes that "conformable" does ***not*** mean

flexible. "A claim is construed in the light of the claim language." *SRI Int'l v. Matsushita Elec.*

*Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985).

Any attempt to vary the language of the claim by subjecting it to construction should be

rejected out of hand given the clear meaning of "adjustable flexible strap conformable to one or

more of the front and side walls of the antenna."

### D. "APPROPRIATE TENSION IN RELATION TO THE ANTENNA" -- CLAIM 1

1. Defendant Contends "Appropriate Tension" Is Indefinite But a Technician Aligning a Tool Makes a Determination of Appropriate Tension on Every Job.

Technicians aligning antennas have long in the prior art pulled an elastic strap to the right tension every time they do an alignment of an antenna. In the prior art, this was typically done by hand and without instrumentation. So in the art this was never an issue of quantification. Nothing has changed, except that the invention allows reliable achievement of appropriate tension with ease. The technician, before and after the invention is applying the appropriate tension for the particular antenna and installation, determining it as the technician always has, but now having an easier time of it.

2. Defendant's Contention Plaintiff Must Anticipate and Specifically Claim Characteristics of Every Antenna to Come along during 20 Year Patent Life Is Ludicrous.

The Defendant argues that the phrase "appropriate tension in relation to the antenna" cannot be understood by one of ordinary skill in the art because the phrase does not specify the characteristics of the antenna. In order to pass the hurdle posited by the Defendant, the patent applicant would have to specify in his application that only the characteristics of all antennas of which he is aware, but also anticipate the characteristics of antennas which might be designed in the future, and include claim language which, as suggested by the Defendant "specif[ies] the characteristics of [each] particular antenna." Clearly, this would be an impossible burden for any inventor to meet and would render it impossible to protect an invention.

3. Defendant Urges Indefiniteness Due To Not Specifying "Bounds of the Term 'Appropriate Tension,'" Even Though Technicians Do This Every Day.

Defendant's position ignores the fact that one of ordinary skill in the art can easily ascertain the appropriate tension needed to secure an AAT to an antenna during the alignment process. Indeed, the Defendant itself is of ordinary skill in the art and knows how tight it wants to make the strap, obviously the tighter the better as long as no damage is done to the antenna. That's just common sense. And it is common sense to recognize that Defendant is creating issues where there are none, in an attempt to make the process long and expensive, and wear out a much smaller competitor. Indeed, as reported in the Patent (1:56-59), specifications for accuracy are given by Defendant in its literature, and such guidance defines what appropriate tension is. When a word of degree is used the district court must determine whether the ***patent's specification*** provides some standard for measuring that degree." [Emphasis added] *Seattle Box.*

Common sense also tells us that higher accuracy in the specifications is better and those of ordinary skill in the art can easily make the strap as tight as necessary to match the requirements of a particular job. Obviously, accuracy would not be required for a cell phone antenna mounted on a building in New York City which need only serve users a relatively small distance away, as compared to an unobstructed cell phone antenna on the top of the tower which might serve users at much greater distances, for example 20 or even 40 miles away.

Moreover, Defendant and others of ordinary skill in the art are well able to measure the specifications of products and thus can easily determine when the amount of tension is sufficient to give the degree of precision sought.

Even putting aside the guidance in the Patent respecting specifications, even if experimentation were required, the same would not invalidate the claims for definiteness. *See, Seattle Box*, 731 F. 2d 818, 826 (need for experimentation so as to determine limits of patent claims found not to make claims invalid 35 USC 112) and *W.L. Gore*, 721 F.2d 1540, 1557.

25

Accordingly, looking to the specification for the meaning of "appropriate tension" is entirely correct.

4. Getting the Right Tension Has Never Been an Issue.

Indeed, the old AAT illustrates the frivolous nature of the contention that the tension is not specified. The problem with the old AAT was that hand tightening would not generate more favorable amounts of tension. Nevertheless Defendant used the old design in its products for years. The use of a mechanical tightening mechanism in accordance with the Plaintiff's patented invention allowed even relatively weak technicians to achieve high degrees of tension.

It is also important to note that the problem with the old AAT was that the friction buckle released some of the tension when the technician ceased pulling on the strap. That is why Defendant used a rubber band as part of the strap.

The present invention solves the problem with a mechanical tightening mechanism, and Defendant's attempt to evade the patent by arguing that it doesn't know how tight to make the strap, now that the invention enables a high degree of tension is completely frivolous. The claim is not at all indefinite, and the Court is respectfully urged to so find.

**E. "ARM IS AT LEAST AS LONG AS THE WIDTH OF THE BACK WALL OF THE ANTENNA" -- CLAIM 2**

1. Nothing Could Be Simpler Than Determining Whether One Part Is Longer Than Another.

Defendant urges that the phrase the "arm is at least as long as the width of the back wall of the antenna" is indefinite for failing to specify the characteristics of a particular antenna. Once again, is a simple matter to measure the width of the antenna back wall and compare it to the length of the arm. There is thus no question of indefiniteness.

26

The characteristics of the antenna are irrelevant to the question of definiteness. Rather if the arm is not at least as long as the width of the back wall of the antenna (or the equivalent under the doctrine of equivalents), there will be no infringement. Accordingly, Defendant has confused the question of definiteness with the question of infringement.

In any case, predicting the characteristics of products 20 years into the future of antenna development is unreasonable as a precondition for patent protection and, unsurprisingly, not required by the law.

Clearly, the specification of relative lengths of the arm and the back wall of the antenna is definite, and the claim is enforceable.

### F. "BRACKET CONFORMS TO THE ONE SIDE WALL OF THE ANTENNA" - - CLAIM 4

1. Applicant Is Not Required to Anticipate Characteristics of Future 20 Years of Antenna Development.

The shape of antenna sidewalls is irrelevant. The Patent specifically teaches that the conforming bracket may be made flat, curved or any other appropriate shape needed to conform to the wall. What the patent teaches is that conforming to that shape is what counts. Here the claim specifies what counts. It states that the bracket conforms to the one side wall of the antenna. There is nothing indefinite about that, and the Court is respectfully urged to so find.

2. Proposed Instruction Mangles Language by Definition of Different Word and Addition of Term "Flexible" from Nowhere.

As detailed above, Defendant cannot just rewrite a claim to create an argument for noninfringement by introducing the definition of another word and adding the concept of flexibility completely unrelated to either the original wording of the claim or its wording change. Adding the word "flexible" to the claim is not faithful to the claim which was prosecuted in the

Patent Office and allowed by the patent examiner. Moreover, the claim is clearly definite and puts the public on notice about the coverage of the claim.

Moreover, a flexible bracket is not disclosed anywhere in the Patent. Rather, the applicant teaches that the bracket is rigid. "In embodiments of the present invention adaptable to antenna [where] the back wall of the antenna is a different shape, for example, such as a curved shape, the present invention may include an arm or bracket that conforms to the curved shape of the antenna." Patent, 5:23-31.

It is respectfully urged that construction of the claim term is completely unnecessary, and will only work to defeat the intent of the USPTO in issuing the Patent.

3. To the Extent That the Court May Construct the Term, Dictionary Definitions Should Be Used.

The Merriam-Webster dictionary defines "conformable" as "consistent in form." This language may simply be inserted into the claim phrase to produce the construction: --the bracket being consistent in form to the one side wall of the antenna.--

## G. "SUFFICIENTLY LONG ALONG THE BACK WALL OF THE ANTENNA TO MAINTAIN ALIGNMENT ACCURACIES" -- CLAIM 15

1. Persons of Ordinary Skill in the Art Can Measure Accuracy.

As detailed above in connection with the language respecting the tension of the strap, persons of ordinary skill in the art can measure accuracy. Accordingly, there is nothing indefinite about this claim. The specification specifies accuracies for commercial product and sets the objective of improving them. Accordingly, routine experimentation varying the length of the arm will quickly reveal the length sufficient to achieve accuracy for a given antenna. Obviously, antennas will continue to evolve and practicing the invention will require tailoring it to new

28

developments. The Patent teaches that alignment accuracy relies upon, in part, the length of the arm. As antennas get longer or shorter, as the application requires higher or lower accuracy depending upon the distance of smart phones being served, as antennas become more directional and thus more susceptible to performance deterioration due to failure to maintain alignment to higher degrees of accuracy, the requirements for the length of the arm will vary. The only experimentation required in the development of products is that the arm be made long enough and routine variation in measurement of accuracy using the particular antenna involved is a simple routine matter and not sufficient to carry the heavy burden that a claim is indefinite.

To the extent that the Court believes it necessary to construe this term, it should be given its plain and customary meaning:

--sufficiently long along the back wall of the antenna to maintain alignment accuracies" to effect its function of "retaining an antenna in a reference position… to a back wall of the antenna"[4]-- (claim1)


### V. CONCLUSION.

To summarize, A) the attempt of the Defendant to change the word "conformable" to mean flexible is made without any basis or justification.  The point is urged by Defendant in a misguided effort to evade a finding of infringement, based on its use of a rigid bracket. But the Patent only discloses a rigid bracket, and such a construction excludes all embodiments of the invention disclosed in the Patent, and is wrong as a matter of law.  Even if one were to accept the premise of such a construction, the conflict between the construction and the disclosed structure would render the claim insolubly ambiguous, indefinite and invalid, not to mention making the

---

[4] Language  taken from Claim 1

29

claim cover only a wholly flexible device that could not steadily hold the tool to the antenna being aligned. In contrast, the dictionary definition of the plain words of the claim describe the structure disclosed in the Patent specification, and read on the functional device made and patented by Multiwave, and then copied by the Defendant. Likewise without merit is the contention B) that "substantially perpendicular" is indefinite, as these two words are easily understood to describe a common bracket and the disclosed and infringing bracket. Moreover, no example is even suggested of a structure that might have another form, so there isn't even any real contention here. Defendant appears to dispute the definiteness of the C) adjustable flexible strap conformable to other walls of the antenna but its disclosure of disputed terms sets forth no basis. But the strap disclosed in the Patent and copied by Defendant is clearly adjustable, flexible and conformable and no construction is needed here. D) "Appropriate tension"just means tight enough to give a steady reading, is gauged hundreds of times by cellphone technicians every day and needs no construction. Nothing could be simpler than determining whether one part is E) "at least as long as" another (Claim 2), and no construction is needed here. Defendant's position that the antenna characteristic is not specified in the claim is logically flawed because whether or not the "at least as long as" limitation is met goes to the question of infringement as was apparent to the inventors and the patent examiner when the claim was filed and approved by the USPTO. The same applies to the recitation of F) "conforms" in Claim 4. G) Sufficiently long to maintain alignment accuracies (Claim 15) is something that will vary from situation to situation and is easily determined and thus poses no indefiniteness issues.

For the foregoing reasons, Multiwave respectfully submits that no construction is needed for the seven terms in the asserted claims of the Patent that Sunsight has identified for

construction. If the Court believes that it is necessary to construe one or more of those terms,

Multiwave respectfully requests that the Court adopt its construction.

DATED this 29th day of June, 2017.

HANDAL & MORFOSKY, LLC

By: /s/ Anthony H. Handal
Anthony H. Handal
*Attorneys for Plaintiff*
*Multiwave Sensors, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 30 the day of June, 2017, I caused Plaintiff's Opening Claim Construction Brief to be served on all counsel of record by filing on the Court's ECF filing system:

HANDAL & MOROFSKY LLC

By: /s/ Anthony H. Handal
      Anthony H. Handal
      HANDAL & MOROFSKY LLC
      83 East Ave.
      Norwalk, Connecticut 06851
      Tel: 917.880.0811
      Email: handal@handalglobal.com

*Attorneys for Plaintiff*
*Multiwave Sensors, Inc.*