# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**MULTIWAVE SENSORS, INC.,**

    **Plaintiff,**

**v.**                                                                                Case No:  6:17-cv-761-Orl-31DCI

**SUNSIGHT INSTRUMENTS, LLC,**

    **Defendant.**

## ORDER

This matter comes before the Court after a hearing on the Motion for Claim Interpretation (Doc. 102) filed by the Defendant, Sunsight Instruments, Inc. ("Sunsight"), the opening claim construction brief (Doc. 103) filed by the Plaintiff, Multiwave Sensors, Inc. ("Multiwave"), and the responses in opposition (Doc. 108, 109) filed by both parties.

### I.  Background

Cell phone antennas are routinely mounted in groups on towers.  Each antenna in such a group requires manual orientation to precisely cover the proper portion of the area around it, without gaps or overlapping.  (Doc. 103 at 8).  The parties to this dispute both sell antenna alignment tools, which are used to accomplish that orientation.  To be utilized, the alignment tools are (temporarily) attached to an antenna, at which point they can be used to determine such things as the direction the antenna is facing and the amount it is tilted from horizontal.  After a technician reorients the antenna into the proper position, the alignment tool is detached from it.

Multiwave is the assignee of U.S. Patent No. 8,443,779 (henceforth, the "'779 Patent"), entitled "Apparatus for Aligning an Antenna in a Reference Position," which issued on May 7, 2013.  As described in more detail below, Multiwave's invention is an apparatus for attaching an

alignment tool to an antenna. Multiwave contends that its invention is an improvement over the prior art in that it allows the tool to be attached against (and in reference to) the back wall of an antenna, which allows for a more accurate determination of the antenna's alignment than when the tool is attached to other surfaces of the antenna.

Multiwave contends that at least one product produced and sold by Sunsight – the AAT-30 antenna alignment tool – infringes the '779 Patent. (Doc. 91 at 3-4). Multiwave filed this suit on February 22, 2016 in the Southern District of New York. It was transferred to this Court on April 27, 2017. In the sole count of the Amended Complaint (Doc. 91), which is the operative pleading, Multiwave accuses Sunsight of infringing the '779 Patent either directly or through acts of contributory infringement or inducement. (Doc. 91 at 4). Sunsight filed the instant motion on June 30, 2016. A hearing on the matter was held July 25, 2017.

**II. Legal Standard**

Determining whether an accused process or device infringes a patent claim is a two-step process. The first step is claim construction, which involves ascertaining the scope and meaning of the claims at issue, while the second step involves determining whether the claims as construed read on the accused device. *Ultra–Tex Surfaces, Inc. v. Hill Bros. Chemical Co.,* 204 F.3d 1360, 1363 (Fed.Cir. 2000). Interpretation and construction of patent law claims is a question of law to be resolved by the Court. *Markman v. Westview Instruments, Inc.,* 52 F.3d, 967, 970–71 (Fed.Cir. 1995), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

In determining the proper construction of a claim, the court has numerous sources that it may properly utilize for guidance, including both intrinsic evidence – such as the patent specification and file history – and extrinsic evidence, such as expert testimony. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed.Cir.1996). The intrinsic evidence is the most significant source of

the legally operative meaning of disputed claim language and should be looked to first. *Id.* But the different forms of intrinsic evidence are not weighted equally.

> First, we look to the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention. Although words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, so long as the special definition of the term is clearly stated in the patent specification or file history.
>
> Thus, second, it is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning. The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication. As we have repeatedly stated, claims must be read in view of the specification, of which they are a part. The specification contains a written description of the invention which must be clear and complete enough to enable those of ordinary skill in the art to make and use it. Thus, the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.
>
> Third, the court may also consider the prosecution history of the patent, if in evidence.
>
> …
>
> In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term. In such circumstances, it is improper to rely on extrinsic evidence.

*Id.* at 1582–83 (internal citations and quotations omitted).

### III. Analysis

The '779 Patent includes 15 claims, with claim 1 being the only independent claim. The Defendant seeks construction of terms that appear in the following four claims of the '779 Patent:[1]

---

[1] Terms with which the Defendant takes issue have been **bolded**.

- 3 -

> 1. An apparatus for removeably retaining an antenna in a reference position that is in reference to a back wall of the antenna during alignment of the antenna, said apparatus comprising:
>
> a) a bracket incorporating **a bracket arm being conformable to one or more walls of the antenna**, including at least the back wall of the antenna, and **a mounting brace substantially perpendicular to the bracket arm**;
>
> b) a securing means attached to the bracket, said securing means being operable to retain the antenna in the reference position and including an adjustable flexible strap conformable to one or more of the front and side walls of the antenna, and a tightening mechanism operable to tighten and release the flexible strap to an **appropriate tension** in relation to the antenna; and
>
> c) an alignment device attached to the mounting brace, said alignment device being moveable to a variety of positions, and said alignment device being operable to align the antenna and to determine the alignment of the antenna with reference to the back wall of the antenna.
>
> …
>
> 2. The apparatus of claim 1, wherein the arm is **at least as long as the width of the back wall** of the antenna.
>
> ...
>
> 4. The apparatus of claim 1, wherein the bracket is in contact with one side wall of the antenna, **and the bracket conforms** to the one side wall of the antenna.
>
> …
>
> 15. The apparatus of claim 1, wherein the arm is **sufficiently long along the back wall of the antenna to maintain alignment accuracies**.

(Patent at 10:35-54, 10:55-56, 10:61-62, 11:27-29) (emphasis added).

    A.    <u>Terms including "conforms" and "conformable"</u>

As set forth in the specification, the instant invention may be used to align several different types of antenna, "such as a panel antenna, directional antenna, multi-directional antenna, parabolic, antenna arrays or omni-directional antenna." ('779 Patent at 3:57-60). Such antennae have

different shapes.  The specification speaks of some having flat walls, others having one or more curved walls, and others, more vaguely, "in which none of the walls are required to be substantially flat."  ('779 Patent at 9:3-4).  In addition, the specification states the invention may be utilized on antennas in which the opposite walls are not parallel.  ('779 Patent at 2:7-10).

Claim 1 recites a bracket arm that is "conformable" to one or more walls of the antenna.  ('779 Patent at 10:39-40).  In claim 4, the bracket conforms to a side wall of the antenna.[2]  ('779 Patent 10:61-63).  "Conformable" is defined as "corresponding in form, nature, or character; similar."[3]  According to the Defendant, the scope of claim 1 is indefinite, because it does not define the shape of the antenna itself, creating uncertainty as to the shape of a bracket arm that would be "conformable" to one or more of its walls.  (Doc. 102 at 12).  Because of this uncertainty, the Defendant contends, the bracket arm described in Claim 1 should be interpreted as being flexible (rather than rigid), "such that the claimed apparatus has the same shape, outline, or contour as any antenna structure."[4]  (Doc. 102 at 12-13).

Such an interpretation finds no support in the language of the patent itself.  Although the term "flexible" appears several times in the specification, it is only used to describe the strap that secures the bracket to the antenna, rather than the bracket or bracket arm.  For example, the specification provides that "[t]he securing mechanism may comprise a flexible strap disposed

---

[2] As the arguments are essentially the same in regard to "conformable" in count 1 and "conforms" in count 4, for simplicity's sake this opinion will address only the arguments in regard to count 1.

[3] *Conformable Definition,* Dictionary.com, http://www.dictionary.com/browse/conformable (last visited September 24, 2017).

[4] Presumably, the same would hold true for claim 4, which specifies a bracket that "is in contact with one side wall of the antenna, and the bracket conforms to the one side wall of the antenna."  ('779 Patent at 10:61-63).

around said antenna"[5] and describes one proposed embodiment, to be used in conjunction with an antenna that has a circular housing, in which "the flexible strap … may conform to one or more walls of the antenna, as shown in FIG. 13." ('779 Patent at 9:41-42). The specification does not describe any bracket or bracket arm as flexible, and it does not identify any prior art with a flexible bracket or bracket arm. To the contrary, the prior art cited in the specification – including Sunsight's alignment tool – incorporates rigid brackets.[6] (Doc. 102 at 12).

The Defendant asserts that the invention must incorporate a flexible bracket because, *inter alia*, "a rigid bracket arm cannot possibly 'conform' to a circular antenna." (Doc. 102 at 13). The Defendant is incorrect; a rigid, curved bracket could conform to a circular antenna. The Defendant appears to be operating under the assumption that the invention's bracket must conform to every possible antenna shape. But the patent does not disclose a one-size-fits-all apparatus. Instead, the specification expressly suggests multiple embodiments to address antennae with different shapes:

> In embodiments of the present invention adaptable to antenna that do not have a flat back wall, for example, such as a curved shape, the present invention may include an arm or bracket that conforms to the curved shape of the antenna. The present invention may modify its shape or include a means that may follow the contour of the back wall of the antenna and to maintain this contour. A skilled reader will recognize that other means may be incorporated in embodiments of the present invention to allow for use of the present invention with antenna that do not have flat back walls.

('779 Patent at 5:26-37).

In light of the foregoing, the Court will not interpret the patent so as to require flexible brackets or flexible bracket arms. *See also Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d

---

[5] '779 Patent at 4:24-26.

[6] This should come as no surprise. Given that the objective is to maintain the alignment tool in a fixed position relative to the antenna during the alignment, an inflexible bracket would seem the obvious choice.

1371, 1374 (Fed. Cir. 2004) (stating that "[t]his court, however, repeatedly and consistently has recognized that courts may not redraft claims, whether to make them operable or to sustain their validity" and citing cases).

B. Undefined "antenna"

If the claimed apparatus is not flexible, the Defendant argues, the claims are indefinite because "it is impossible to know whether an apparatus will infringe or not, as it depends on the shape of a given antenna." (Doc. 102 at 14-15). For example, a device with a bracket arm that is "conformable" to the back wall of one type of antenna would infringe the '779 Patent when used with that antenna but might not when used with an antenna of a different shape. (Doc. 102 at 16).

Section 112 of the Patent Act requires that a patent specification "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C. § 112(b). A lack of definiteness renders invalid the patent or any claim in suit. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S.Ct. 2120, 2125 (2014). A claim fails to satisfy this statutory requirement and is thus invalid for indefiniteness if its language, when read in light of the specification and the prosecution history, fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention. *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1369-70 (Fed. Cir. 2014) (citing *Nautilus*, 134 S.Ct. at 2124). Patents are presumed to be valid, and the challenger bears the burden of establishing invalidity by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).

The Defendant is, in effect, arguing that unless the invention disclosed in the '779 Patent is limited in its application to a particular antenna or antennas, people of skill in the art who want to build a non-infringing device cannot be sure they are doing so. Without knowing the antenna

shapes they must avoid, such persons could not determine in advance whether the brackets of their own devices might happen to conform to the back wall of some antenna, somewhere, and thereby result in infringement. (Doc. 102 at 16-17). For its part, the Plaintiff asserts that a person of ordinary skill in the art can easily determine whether a bracket conforms to the back wall of an antenna, and presents an affidavit from one of the inventors of the '779 Patent to that effect. (Doc. 109-1). It is not clear that this resolves the issue; saying that a person of ordinary skill can easily determine whether a bracket conforms to an antenna's back wall is not the same things as saying that such a person could determine whether it conforms to the back wall of any type of antenna currently in use. However, Sunsight has not produced anything to support its contention that the universe of antennae is so varied as to render persons of skill in the art incapable of determining whether a particular device might infringe the '779 Patent. Accordingly, the Court finds that Sunsight has not met its burden and finds for Multiwave on this point.

C. Claims involving the phrases "substantially perpendicular," "sufficiently long … to maintain alignment accuracies," and "appropriate tension"

Sunsight contends that the phrase "substantially perpendicular" – found in claim 1(a) and used to define the spatial relationship between the bracket arm and the mounting brace – renders claim 1 indefinite in two ways. First, the claim "fails to define the planes of perpendicularity." (Doc. 102 at 17-18). (More particularly, Sunsight complains, the term fails to define the plane of the bracket arm or the planes of perpendicularity of the mounting brace. (Doc. 102 at 18).) Second, inclusion of the qualifier "substantially" – something referred to in patent interpretation as "a word of degree" – adds "further confusion." (Doc. 102 at 18).

Although Sunsight complains about the failure to define the planes of perpendicularity, it provides no evidence – or even any argument – that such a definition is needed to allow one skilled

in the art to practice the invention. The Court therefore sees no basis for requiring such a definition. As for the term "substantially," claim language employing terms of degree has long been found definite where it provided enough certainty to one of skill in the art when read in the context of the invention. *Interval Licensing*, 766 F.3d at 1370 (in patent relating to audio-video monitors, finding that term "to selectively display, in an unobtrusive manner" was indefinite, as phrase "unobtrusive manner" was "highly subjective" and written description did not provide an objective definition). A patentee need not define an invention with mathematical precision to comply with the definiteness requirement. *Oakley v. Sunglass Hut Intern.*, 316 F.3d 1331, 1341 (Fed. Cir. 2003). Again, Sunsight provides no explanation as to how the term might cause such confusion that one of ordinary skill could not make or practice the invention.

The same holds true for Sunsight's complaints about the phrase "sufficiently long along the back wall of the antenna to maintain alignment accuracies," which appears in dependent claim 15 and describes the bracket arm, and "appropriate tension," which appears in claim 1(b) and describes the use of tightening of the flexible strap. Sunsight contends that the failure to provide fixed numbers for the length of the bracket arm and the degree of accuracy that must be maintained during the alignment process renders claim 15 indefinite – particularly when combined with the lack of a definition as to the specific antenna to be aligned. (Doc. 102 at 19). But patents are not addressed to lawyers, or even to the public generally, but rather to those skilled in the relevant art. *Nautilus*, 134 S.Ct. at 2128. Sunsight has provided nothing to support the notion that someone skilled in the art who was attempting to create an embodiment of the invention would be unable to determine whether a particular bracket arm was long enough, in relation to the back wall, to permit the flexible strap to hold the bracket firmly enough to the antenna to prevent shifting during the alignment

process. Sunsight has also not produced anything that would suggest those skilled in the art would not be able to determine the amount of tension that would be "appropriate" to accomplish this.

The Court finds that neither the lack of a specified antenna or the use of the words of degree discussed *supra* renders any part of the '779 Patent indefinite.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on September 29, 2017.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party